JOHNSON, Justice.
 

 | ¶ These consolidated criminal cases are before us on direct appeal pursuant to La. Const, art. V, § 5(D).
 
 [1]
 
 We are called upon to determine whether the district court erred in declaring La. R.S. 15:560
 
 et seq.
 
 unconstitutional. For the following reasons, we reverse the ruling of the district court.
 

 1 .FACTS AND PROCEDURAL HISTORY
 

 Defendants, Bryan Golston, Paul Baker, Calvin Watson, Lloyd Dell, and Reginald Jackson, are soon-to-be-released convicted sex offenders who have undergone the Sex Offender Assessment Panel (“SOAP”) process pursuant to La. R.S. 15:560
 
 et seq.
 

 The SOAP framework was initially enacted in 2006
 
 [2]
 
 to protect “our most innocent and defenseless citizens,” to tackle the inherent problem of recidivism among sex offenders, to “facilitate the identification of those offenders who are sexually violent and child sexual predators,” and to mandate that those individuals “register as sex offender for life.” La. R.S. 15:560.
 
 [3]
 
 The legislature has targeted two categories of sex offenders — “sexually violent predators” and “child sexual predators’]— recognizing3 these offenders “often pose a high risk of engaging in sex offenses and crimes against victims who are minors after being released from incarceration or
 
 *455
 
 commitment and that the protection of the public from sexually violent predators is of paramount governmental interest.”
 
 Id.
 
 La. R.S. 15:560.1 defines these classifications as follows:
 

 (1) “Child sexual predator” means a person who has been convicted of a sex offense as defined in R.S. 15:541 and who is likely to engage in additional sex offenses against children, because he has a mental abnormality or condition which can be verified by a physician or psychologist, or because he has a history of committing crimes, wrongs, or acts involving sexually assaultive behavior or acts which indicate a lustful disposition toward children, as determined by the court upon receipt and review of relevant information including the recommendation by the sex offender assessment panel as provided for by this Chapter.
 

 (2) “Sexually violent predator” means an offender who has been convicted of a sex offense as defined in R.S. 15:541 and who has a mental abnormality or antisocial personality disorder that makes the offender likely to engage in predatory sexually violent offenses as determined by the court upon receipt and review of relevant information including the recommendation of the sex offender assessment panel as provided for by this Chapter.
 

 In order to provide additional guidance, the legislature also defined “mental abnormality” as:
 

 [A] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of others. Nothing in this definition is intended to supersede or apply to the definitions found in R.S. 14:10 or 14 in reference to criminal intent or insanity.
 

 La. R.S. 15:560.1(4).
 

 If an offender is recognized as a “child sexual predator” (“CSP”) or a “sexually violent predator” (“SVP”), the law imposes more extensive reporting and monitoring requirements pursuant to La. R.S. 15:560.3. This statute provides that an offender must adhere to the following mandates for the duration of his natural life:
 

 L(l) Register as a sex offender in accordance with the provisions of R.S. 15:542
 
 et seq.
 
 and maintain such registration for the remainder of his natural life.
 

 (2) Provide community notification in accordance with the provisions of R.S. 15:542
 
 et seq.
 
 for the duration of his natural life.
 

 (3) Submit to electronic monitoring pursuant to the provisions of R.S. 15:560.4 for the duration of his natural life.
 

 (4) Report to the probation and parole officer when directed to do so.
 

 (5) Not associate with persons known to be engaged in criminal activities or with persons known to have been convicted of a felony without written permission of his probation and parole officer.
 

 (6) In all respects, conduct himself honorably, work diligently at a lawful occupation, and support his dependents, if any, to the best of his ability.
 

 (7) Promptly and truthfully answer all inquiries directed to him by the probation and parole officer.
 

 (8) Live and remain at liberty and refrain from engaging in any type of criminal conduct.
 

 (9) Not have in his possession or control any firearms or dangerous weapons.
 

 (10) Submit to available medical, psychiatric, or mental health examination and treatment for persons convicted of sex
 
 *456
 
 offenses when deemed appropriate and ordered to do so by the probation and parole officer.
 

 (11) Defray the cost, or any portion thereof, of his supervision by making payments to the Department of Public Safety and Corrections in a sum and manner determined by the department, based on his ability to pay.
 

 (12) Submit a residence plan for approval by the probation and parole officer.
 

 (13) Submit himself to continued supervision, either in person or through remote monitoring, of all of the following Internet-related activities:
 

 (a) The offender’s incoming and outgoing electronic mail and other Internet-based communications.
 

 (b) The offender’s history of websites visited and the|scontact accessed.
 

 (c)The periodic unannounced inspection of the contents of the offender’s computer or any other computerized device or portable media device and the removal of such information, computer, computer device, or portable media device to conduct a more thorough inspection.
 

 (14)Comply with such other specific conditions as are appropriate, stated directly, and without ambiguity so as to be understandable to a reasonable man.
 

 La. R.S. 15:560.3(A). If the offender is unable to pay and no funds are available to the Department of Public Safety and Corrections, the electronic monitoring provision may be waived. La. R.S. 15:560.4.
 
 [4]
 
 Failure to comply with the electronic monitoring | ^provision is a felony, while failure to comply with the other requirements is
 
 *457
 
 punishable as contempt of court. La. R.S. 15:560.3(0; La. R.S. 15:560.4(E).
 
 [5]
 

 In order to help determine whether offenders are classified as a SVP or CSP, the legislature created the Louisiana Sex Offender Assessment Panel, which consists of three members: a medical professional, the secretary of the Department of Corrections (“DOC”) (or his designee), and the warden of the institution where the offender is incarcerated. The statute dictates that the medical professional must be a licensed Louisiana psychologist who has been engaged in clinical or counseling psychology for no less than three consecutive years, or a physician employed by the DOC whose “credentials and experience are not incompatible with the evaluation of the potential threat to public safety that may be posed by a sexually violent predator or a child sexual predator.” La. R.S. 15:560.2(B)(1).
 
 [6]
 

 
 *458
 
 |7Pursuant to La. R.S. 15:560.2, this panel must meet at least once per quarter Land evaluate every sex offender released from DOC custody six months before his scheduled release to determine if he is a SVP or CSP. The panel must review “presentence reports, prison records, medical and psychological records, information and data gathered by the staffs of the Board of Pardons and the Board of Parole, information provided by the convicted offender, the district attorney, and the assistant district attorney, and any other information obtained by the boards or the Department of Public Safety and Corrections.” La. R.S. 15:560.2(E). If the panel determines that an offender meets the definition of a SVP or CSP, it must forward a recommendation to the district court in which defendant was originally sentenced. This recommendation must include the factual basis upon which the recommendation is made and a copy of all information available to the panel. La. R.S. 15:560.2(H).
 

 Upon receipt of a recommendation, the district court is required to schedule a hearing to review the panel’s determination. La. R.S 15:560.2(1). The court must give notice to the defendant, his attorney of record, the office of the district attorney who prosecuted the offender for the underlying offense, and the victim of the underlying offense.
 
 Id.
 
 The notice must inform the offender that he has the right to be present at the hearing, that he has the right to present evidence, that he has a right to counsel, and that if indigent, an attorney will be appointed to represent him!
 
 Id.
 
 If the court finds by clear and convincing evidence that the offender meets the statutory definition of a SVP or CSP, he must comply with the additional
 
 *459
 
 reporting and monitoring requirements set forth in La. R.S. 15:560.3.
 
 Id.
 

 A classified SVP or CSP may petition the court for a review of its adjudication once every three years, “provided that the sex offender is currently receiving treatment from a court, or a treatment provider approved by the Department of Public Safety and Corrections, and good cause for such reconsideration is shown by the sex laoffender.” La. R.S. 15:560.5. If the court grants review, it will refer the case to the panel for a new recommendation. The panel will forward its determination to the sentencing court. Again, if the court finds by clear and convincing evidence that the offender meets the definition of a SVP or CSP, he must remain in adherence with the provisions of La. R.S. 15:560.3.
 
 Id.
 

 In the instant cases, SOAP panels recommended that each offender met the definition of either a SVP or CSP. Prior to their mandatory court hearings, the offenders each filed a
 
 Motion to Declare La. R.S. 15:560 et seq. Unconstitutional.
 
 The offenders argued the statutes violated their due process rights, rights against
 
 ex post facto
 
 legislation, and were void for vagueness.
 

 The court held a hearing consisting of testimony from Dr. Susan Tucker, Mr. Reginald Peabody, and Mr. Barry Metheny— all of whom serve on sex offender assessment panels.
 
 [7]
 
 The primary testimony in support of the defendants’ motions was given by Dr. Tucker, who is employed as a clinical psychologist by the DOC and serves as the chairperson for all three SOAP panels in the state. The significant points of Dr. Tucker’s testimony can be summarized as follows:
 

 • SOAP panels have performed approximately 1200 reviews in the first one and a half years of their existence
 

 • information considered by the SOAP panel may vary depending on what is available; typically the panel considers criminal history; the victim; number of victims; police reports; victims’ statements; progress while incarcerated; disciplinary issues during incarceration
 

 • panel members are sent a packet of information a couple of weeks before the panel meeting to review
 

 • no offender has offered an independent psychological assessment to the panel prior to its meeting
 

 lm* public safety is always her paramount concern in making the panel decision
 

 • agrees that definitions of “sexually violent predator” and “child sexual predator” provided in the statute are circular in nature
 

 • she would prefer to have greater guidance from a statute or a regulation to determine who is a predator
 

 • she has to “do a lot of inferring” in making her decision and would prefer a clearer and more logistical way to make the determination; a lot of the information she has to rely on is old; some is difficult to read; some is minimal
 

 • the SOAP procedure has been a challenge, but they have done the best they can, and they always put public safety .first
 

 • she would appreciate if a defendant were able to obtain his own independent mental health examination; she
 
 *460
 
 always prefers more information over less information
 

 • she believes they have had some “false positives” based on minimal information when the SOAP process began; the SOAP panels are much better now with experience, and there is much more consensus in the process; it has been “on-the-job training”
 

 • determining whether or not someone is a sexually violent predator is not an exact science
 

 • SVP and CSP are not recognized diagnoses within the DSM
 
 [8]
 

 • if the SOAP panels had more resources, more time and more staff, these determinations could be done in a more prudent way
 

 • she believes the SOAP panels have discretion to bring the offenders to the panel meetings, but they decided early on it would be too cumbersome and it would not allow the panels to meet the requirements of the statute
 

 • as a psychologist, she is challenged with trying to determine a mental abnormality; she would like to have the offender present and perhaps an independent evaluation as an ideal situation
 

 • in making a determination of mental abnormality she has to rely on previous diagnoses by others; if no such testing has been done, there is no way to properly make that assessment
 

 |n*of the 1200 total reviews, approximately 700-800 offenders were not recommended by the panels
 
 as
 
 a SVP or CSP and thus did not proceed to a court hearing
 

 • the panel process is “much better” ■ than it was at the beginning
 

 Following the hearing, the district court held La. R.S. 15:560
 
 et seq.
 
 to be unconstitutionally vague. The court concluded that the SOAP statutory scheme failed to meet the requirements of due process because of vagueness caused by its failure to set forth standards to enable sex offenders to protect themselves against arbitrary and discriminatory forfeiture of property and liberty. The court found that the SOAP panel hearing is a critical stage of the process determining whether the court will find an offender to be a SVP or a CSP, and thus the penalties listed in La. R.S. 15:560.3 may be imposed on an offender only after a hearing that measures up to the essentials of due process and fan-treatment.
 

 The court dissected the procedural framework of the panel hearings, and highlighted the deficiencies in notice given to a defendant in two regards: the notice of the actual panel hearing and notice as to the criteria used by the panel in making its determination. The court noted the statutes require SOAP panels to review information provided by the offender, yet fail to provide a mechanism by which the offender is given notice of the panel meeting. Further, “[wjithout notice of the criteria used, the offender is in no position to understand the type of information he needs to provide to the panel in mitigation of the criteria.”
 

 The court also found the statutory definitions of SVP, CSP and “mental abnormality” to be circular and insufficient guideposts for both the offenders and panel members. The court relied on the testimony of Dr. Tucker, who testified that SVP and CSP are not recognized psychiatric diagnoses in the DSM. Further, Dr.
 
 *461
 
 Tucker testified panels do not have enough information to make an informed 112recommendation and the prudent thing would be to conduct an independent evaluation of each offender. The court noted the absence of any requirement for a current psychological evaluation of the offender and the failure of the legislature to provide any resources for such a test. In short, the court found these shortcomings to result in arbitrary findings by the panel.
 

 Additionally, the court critiqued the inadequacies of the sentencing court hearing. It found that La. R.S. 15:560
 
 et seq.
 
 failed to define the burden of proof, to outline whether an offender has a right to a psychological evaluation and who is to pay for it, or to provide a mechanism by which the court may appoint counsel. The court found the statutory evidentiary standard of “clear and convincing” evidence violated an offender’s right to due process because of the punitive nature of the sanctions.
 

 Finally, the court noted the severity of penalties imposed under La. R.S. 15:560.3. It found the registration, notification, internet usage monitoring requirements and firearm restrictions under La. R.S. 15:560.3 to place undue financial burdens on the offender and to restrict his personal liberties and freedom to change residences and secure employment. The court also specifically found the lifetime electronic monitoring requirement “subjects the offender to continued public scrutiny and humiliation that will likely limit the offender’s job opportunities, housing options, and place restrictions on the offender that will counter his ability to become a productive and contributing member of society.” The court concluded these penalties are deprivations to the offender’s liberty and property that must meet the requirements of due process at both the panel hearings and court hearings.
 
 [9]
 

 | isThe State filed a Motion for Direct Appeal to this Court.
 

 DISCUSSION
 

 Parties’ Contentions
 

 The State first contends the SOAP statutory scheme is not susceptible to a vagueness analysis because it is not a criminal statute in that it fails to prohibit conduct, or contain standards governing future behavior. The act simply contains definitions, criteria and administrative procedures used to identify offenders who pose a risk to the public because of a mental abnormality.
 

 The State also argues the defendants failed to carry their burden of proving a procedural due process violation. The SOAP statutory scheme fully complies with procedural due process requirements. The fundamental requirement of procedural due process is the right to a meaningful opportunity to be heard at a meaningful time. Because the panel recommendation is not a final action, but merely a preliminary step prior to a full contradictory hearing (where the offender receives prior notice, is present, is allowed to put on evidence, and is appointed counsel) there is absolutely no risk of erroneous deprivation of rights due to the lack of notice of the panel stage to the offender.
 

 Further, there is no basis to support the court’s contention that the burden of proof should be “beyond reasonable doubt.”
 
 *462
 
 The Supreme Court has upheld a “clear and convincing” standard in civil commitment cases, and the SOAP statutes provides for less intrusive action.
 

 The State asserts the court’s contention that the SOAP scheme contains no fixed criteria for determining who is a SVP or CSP is patently false. The statutes contain a definition and a list of materials which are to be reviewed by the panel. Moreover, the panel’s recommendation is forwarded to the court, along with all 1 ^information considered and a factual basis explaining the panel’s recommendation. This bifurcated procedure, coupled with clear definitions and a list of materials to be reviewed, provides fixed criteria to guide the exercise of discretion.
 

 Additionally, the State argues the court erred in analyzing the SOAP statutory scheme as if it were a criminal provision. A “critical” stage has no meaning in an administrative context. Sex offender registration, notification and civil commitment schemes are not criminal proceedings. The sentencing court applied criminal due process requirements in striking down an administrative regulatory scheme. This erroneously extended protections and constitutional rights afforded only to criminal defendants to sex offenders undergoing an administrative procedure.
 

 By contrast, the defendants argue that regardless of how the statutes are characterized, they are subject to a due process analysis. Relying heavily on Dr. Tucker’s testimony, defendants argue the SOAP statutory scheme provides insufficient criteria to determine predator status. The only guidance given the panels is in the definitions section of the statute, and the court correctly called these definitions “circular.” The panel is given no real definition, yet its recommendation is a large part of the court’s determination of SVP or CSP status.
 

 Defendants argue panel hearings are a critical stage of this process, and thus must comport with due process requirements. Once a panel makes a recommendation that a person is a predator, that finding goes to the sentencing judge who is compelled to conduct a hearing. It is the panel recommendation that triggers a hearing by the court. Defendants point out that no notice is given to the offender who is the subject of the panel hearing. Notice and the opportunity to be heard are basic elements of due process. While the statutes require the panel to consider information from the convicted offender, this mandate is meaningless because offenders are not made 11saware of the panel meeting, nor advised of the criteria used to make the decision. Defendants further argue the statutes are deficient in failing to require current information or a current psychological evaluation of the offender. The end result is that the panels are forced to rely on outdated information collected by people who may or may not be trained in the field of psychology.
 

 Additionally, defendants assert there are insufficient due process protections at the court hearing. There is no criteria for the judge to determine who is a sexual predator; no assignment of the burden of proof; no opportunity for current information about the offender, including independent psychological examinations; no funding for expert psychological assistance or for counsel for indigent offenders; no criteria for the use and determination or the weight to be given to the information and recommendation of the panel; and an insufficient standard of proof to meet due process requirements and avoid false positives.
 

 Analysis
 

 As a general rule, deferential standards of review apply to factual and other trial determinations, while determi
 
 *463
 
 nations of law are subject to
 
 de novo
 
 review.
 
 State v. Smith,
 
 1999-0606 (La.7/6/00), 766 So.2d 501, 504. Interpretation of a constitutional issue of law properly before this Court is reviewed
 
 de novo. Id.
 

 After reviewing the record, briefs and jurisprudence, we find the district court erred in finding La. R.S. 15:560
 
 et seq.
 
 to be unconstitutionally vague. We agree with the State that the SOAP statutes are technically insusceptible to a void for vagueness analysis. The “void-for-vagueness” doctrine provides that a
 
 criminal
 
 statute must meet two requirements to satisfy due process: (1) adequate notice to individuals that certain contemplated conduct is proscribed; and (2) adequate standards for those charged with determining the guilt or innocence of an accused.
 
 State v. Turner,
 
 2005-2425 (La.7/10/06), 936 So.2d 89, 99. The purpose of the doctrine is to ensure that “a criminal statute does not contain a standard so vague that the public is uncertain as to the proscribed conduct and the factfinder is unfettered by any legally fixed standards as to what is prohibited by the statute.”
 
 Id.
 
 at 99-100. In
 
 State ex rel. Olivieri v. State,
 
 00-0172 (La.2/21/01), 779 So.2d 735, 745-50, this Court held that retroactive application of “Megan’s Law” (La. R.S. 15:542-542.1.4), requiring registration of sex offenders and public notification, did not impose punishment and therefore did not violate state and federal
 
 Ex Post Facto
 
 Clauses, even though the failure to comply with the registration and notification requirements is a crime and the offenders must pay the cost of notification. Implicit in our holding was the finding that Louisiana’s statutory scheme for registration of sex offenders is merely a civil regulatory framework.
 
 Id.
 
 at 747. Similarly, the SOAP statutory scheme contains no prohibition of conduct. The stated purpose of the SOAP statutory scheme is nearly identical to that stated in Louisiana’s sex offense registration scheme analyzed in
 
 Olivieri.
 
 Thus, the stated purpose of the SOAP scheme, like that found in
 
 Olivieri,
 
 is non-punitive. We hold the SOAP statutory scheme is not a criminal provision, but rather a regulatory scheme, and thus cannot be unconstitutionally vague.
 

 Further, we find no due process violations in the SOAP scheme, and hold it is constitutionally valid. Individuals are constitutionally guaranteed the right to due process of law. Procedural due process requires that before an individual is deprived of a property or liberty right, the individual must be provided with notice and an opportunity to be heard.
 
 Thibodeaux v. Donnell,
 
 2008-2436 (La.5/5/09), 9 So.3d 120, 126. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.
 
 Davis v. Scherer,
 
 468 U.S. 183, 202, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).
 

 |17The trial court and defendants primarily focus on alleged due process deficiencies at the panel stage. The panel is not statutorily mandated to conduct a hearing, but only to review materials and make an initial recommendation to a sentencing court. Thus, the court’s reference to the panel meeting as a “hearing” is a mischar-acterization. The SOAP panel serves a screening function by reviewing the available evidence and forming a
 
 recommendation
 
 to the sentencing court. The lack of formal notice of the panel meeting does not result in a violation of the offenders’ constitutional rights. Under the SOAP statutes, an offender receives notice of the court hearing and apprisal of his right to present evidence and his right to counsel, including the right to appointed counsel if
 
 *464
 
 he is indigent.
 
 [10]
 
 Thus, even if the offender does not provide the panel with any information, he may still present information to the sentencing court — the ultimate decision maker.
 

 The court placed great weight on the influence of the panel’s recommendation over the ultimate determination of whether a defendant is a SVP or CSP. The court is required to accept the panel recommendation as evidence, like any other evidence. Although courts will likely rely on the findings of the panel when reaching its ultimate conclusion, the court below failed to note the importance of the fact that an offender has the opportunity to present his own rebuttal evidence, which could include his own independent psychological evaluation. Further, the statutes clearly ensure that the reason for the panel’s recommendation is transparent to the court. The statutes require the factual basis, along with all information relied on by the panel, to be included with the recommendation and sent to the court.
 

 In sum, any perceived procedural due process shortfalls in the SOAP panel | ^review are remedied by the protections afforded to a defendant under La. R.S. 15:560.2(1), which assigns courts the ultimate determination, after a contradictory hearing conducted with the defendant who has the opportunity to present his own evidence as to whether he should be de-dared a SVP or CSP. No offender under the SOAP scheme is subjected to enhanced requirements without this contradictory hearing. These are the hallmark requirements of procedural due process.
 

 We also disagree with the court that the “clear and convincing evidence” burden of proof provided by the statute is insufficient. We find Supreme Court jurisprudence relative to civil commitments instructive. In
 
 Addington v. Texas,
 
 the Supreme Court held that the State must prove mental illness and present dangerousness by clear and convincing evidence before an individual can be civilly committed to a mental institution under state law. 441 U.S. at 433, 99 S.Ct. 1804. Notably, the Court held that proof beyond a reasonable doubt was not required, but proof by preponderance of the evidence fell short of satisfying due process.
 
 Id.
 
 at 432-33, 99 S.Ct. 1804. The Supreme Court reaffirmed this standard in
 
 Foucha v. Louisiana,
 
 noting that a State can “confine a mentally ill person if it shows by clear and convincing evidence that the individual is mentally ill and dangerous.” 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992).
 
 [11]
 
 Further, although defendants argue the statute is silent on who carries the burden of proof at the hearing, a clear reading of the statute implies that the State carries the burden of | ^showing a defendant meets
 
 *465
 
 one or both of the classifications.
 
 [12]
 
 Moreover, the State has acknowledged that it has the burden of proof.
 

 The court also attacked the lack of clarity in the SOAP scheme, specifically the definitions under La. R.S. 15:560.1. We hold the court erred in its analysis, finding guidance in the United States Supreme Court’s decisions in
 
 Kansas v. Hendricks,
 
 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) and
 
 Kansas v. Crane,
 
 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). The criteria and definitions contained in the SOAP statutes are substantially the same as those upheld by the Supreme Court in
 
 Kansas v. Hendricks, supra.
 
 In
 
 Hendricks,
 
 the Supreme Court considered the constitutionality of Kansas’ Sexually Violent Predator Act, which established procedures for the civil commitment of persons who, due to a “mental abnormality” or a “personality disorder,” are likely to engage in “predatory acts of sexual violence.” The defendant claimed the Kansas Act was violative of substantive due process because it only required a finding of a “mental abnormality” rather than demanding proof of “mental illness.” The Kansas Supreme Court agreed, invalidating the Act on the ground that the precommitment condition of a “mental abnormality” did not satisfy what it perceived to be the substantive due process requirements that involuntary civil commitment must be predicated on a “mental illness” finding. 521 U.S. at 350, 117 S.Ct. 2072.
 

 However, the Supreme Court reversed, finding the Kansas Act comported with due process requirements.
 
 Id.
 
 at 371, 117 S.Ct. 2072. The Kansas Act established a civil commitment procedure for the long-term care and treatment of the sexually violent predator. The Act defined a “sexually violent predator” as “any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality | snor personality disorder which makes the person likely to engage in the predatory acts of sexual violence.”
 
 Id.
 
 at 352, 117 S.Ct. 2072. A “mental abnormality” was defined as a “congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others.”
 
 Id.
 
 Kansas argued that the Act’s definition of “mental abnormality” satisfied “substantive” due process requirements, and the Supreme Court agreed.
 
 Id.
 
 at 356, 117 S.Ct. 2072. The Court noted it has routinely sustained civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor, such as a “mental illness” or “mental abnormality.”
 
 Id.
 
 at 358, 117 S.Ct. 2072. The Court found the Kansas Act was similar in that it required a finding of future dangerousness, and then linked that finding to the existence of a “mental abnormality” or “personality disorder” that makes it difficult, if not impossible, for the person to control his dangerous behavior.
 
 Id.
 

 In
 
 Kansas v. Crane,
 
 the Court again considered the constitutionality of the Kansas Act. The Kansas Supreme Court relied on
 
 Hendricks
 
 to find that despite evidence the defendant suffered from a volitional impairment, his commitment was unconstitutional absent a specific finding that he was unable to control his behavior. The Supreme Court vacated that decision,
 
 *466
 
 explaining that
 
 Hendricks
 
 set forth no requirement of total or complete lack of control over dangerous behavior. However, the Court further clarified that the Constitution does not permit commitment of the type of dangerous sexual offender considered in
 
 Hendricks
 
 without any lack of control determination. 534 U.S. at 412, 122 S.Ct. 867.
 

 The SOAP statutory definitions identify those offenders who constitute a risk to the public safety due to an inability to control their behavior. These statutory definitions put an offender on notice and particularly describe to the court offenders |21who are subject to the SOAP requirements. Based on the statutory definitions, the statutes allow an offender to put forth evidence showing that he is not likely to engage in additional sex offenses against children or predatory sexually violent offenses because he lacks a sufficient history of offenses to indicate a lustful disposition toward children or a “mental abnormality.” The definitions and criteria provide sufficient constitutional protections to subject an individual to involuntary civil commitment under the holdings of
 
 Hendricks
 
 and
 
 Crane,
 
 and the SOAP scheme requirements are considerably less severe than civil commitments. The criteria used, requiring a finding of dangerousness and an additional factor indicating lack of volitional control, satisfy the requirements of the Due Process Clause.
 
 Hendricks,
 
 521 U.S. at 346, 117 S.Ct. 2072;
 
 Crane,
 
 534 U.S. at 407, 122 S.Ct. 867.
 

 The district court’s decision was also influenced by Dr. Tucker’s dissatisfaction with the statutory definitions and her testimony that SVP and CSP were not defined in the DSM. While SVP and CSP are not recognized diagnoses in the DSM, the lack of diagnostic categories of offenders subject to SOAP provisions does not render the law unconstitutional. Understandably, Dr. Tucker may prefer terms be defined based on medical definitions. However, there is no constitutional requirement that legal terms or concepts addressing mental abnormalities or mental illnesses be defined based on the DSM. As the Supreme Court recognized in discussing civil commitment statutes in
 
 Hendricks:
 

 Indeed, we have never required state legislatures to adopt any particular nomenclature in .drafting civil commitment statutes. Rather, we have traditionally left to legislators the task of defining terms of a medical nature that have legal significance. As a consequence, the States have, over the years, developed numerous specialized terms to define mental health concepts. Often, those definitions do not fit precisely with the definitions employed by the medical community. The legal definitions of “insanity” and “competency,” for example, vary substantially from their psychiatric counterparts. Legal definitions, however, which must “take into account such issues as individual responsibility ... and | ^competency,” need not mirror those advanced by the medical profession.
 

 Hendricks,
 
 521 U.S. at 359, 117 S.Ct. 2072 (internal citations removed). We note this medical versus legal terminology issue is recurrent in other areas as well. For example, Louisiana’s enactment of the M’Naghten Rule (La. R.S. 14:14) defining “insanity” that renders a person exempt from criminal responsibility cannot be found within the DSM or any other diagnostic manual used in the medical community. Like the SOAP definitions, “insanity” defines a legal concept — not a diagnostic category of medical significance.
 

 We further observe that although the court stated concerns that the statutory
 
 *467
 
 definitions were inadequate and did not allow panels to make SVP or CSP status determinations, the record reflects that the panels are able, and have, made this determination in at least 1200 cases. Notably, the SOAP panels have only recommended a SVP or CSP designation for approximately one-third of those offenders reviewed by the SOAP panels. Additionally, the statute provides an opportunity for an offender to appeal this designation every three years. Thus, offenders are not permanently burdened with any additional requirements and are given a procedure for termination of the enhanced registration and supervision provisions.
 

 Finally, to the extent the district court’s decision implies a substantive due process violation, we find it is in error. Substantive due process rights are balanced against the police power of a governing authority to protect the health, safety, morals and general welfare of the people.
 
 State v. Edwards,
 
 00-1246 (La.6/1/01), 787 So.2d 981, 992. Governments have an inherent need “to protect the safety and welfare of their citizens from the unrestrained liberty of some individuals.”
 
 Edwards,
 
 787 So.2d at 992. The SOAP scheme was enacted to protect the public from sex offenders, and especially sexually violent predators and child predators, who likely | ^pose a high risk of recidivism. The Supreme Court has recognized that “sex offenders are a serious threat in this Nation” and “the victims of sex assault are most often juveniles.”
 
 Connecticut Dept. of Public Safety v. Doe,
 
 538 U.S. 1, 4, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003). Further, the Court has expressed “grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class,” noting “[t]he risk of recidivism posed by sex offenders is frightening and high.”
 
 Smith v. Doe,
 
 538 U.S. 84, 103, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2002) (citing
 
 McKune v. Lile,
 
 536 U.S. 24, 34, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002)). Based on
 
 Hendricks
 
 and
 
 Crane, supra,
 
 we find the SVP and CSP classifications constitutional.
 

 CONCLUSION
 

 For the above reasons, we reverse the district court’s finding that La. R.S. 15:560
 
 et seq.
 
 is unconstitutionally vague. We find La. R.S. 15:560
 
 et seq.
 
 to be a regulatory, rather than criminal statutory scheme, and thus not subject to a void for vagueness analysis. Further, even applying a due process analysis, we find no due process violations. The SOAP statutory scheme provides offenders with notice and a meaningful opportunity to be heard at a court hearing to determine SVP or CSP status. Additionally, we find the statutory definitions constitutionally sufficient to allow the panel to make its recommendation and the court to make a determination of SVP or CSP status.
 

 DECREE
 

 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
 

 [1]
 

 . La. Const. art. V, § 5(D) provides: In addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional or (2) the defendant has been convicted of a capital offense and a penalty of death actually has been imposed.
 

 [2]
 

 . La. Acts 2006, No. 186.
 

 [3]
 

 . La. R.S. 15:560 provides:
 

 A. The Legislature of Louisiana has long recognized the need to protect our most innocent and defenseless citizens from sex offenders, sexually violent predators, and child predators and has enacted statutory provisions to provide one of the most extensive sex offender registration and notification laws in the United States.
 

 B. The legislature has enacted provisions requiring lifetime registration of sexually violent predators and has legislatively created the sexually violent predator commission as the entity which would determine which offenders are sexually violent predators. However, those provisions have rarely been utilized.
 

 C. The legislature finds that sexually violent predators and child sexual predators often pose a high risk of engaging in sex offenses and crimes against victims who are minors after being released from incarceration or commitment and that the protection of the public from sexually violent predators is of paramount governmental interest.
 

 D. In consideration of the potentially high rate of recidivism and the harm which can be done to the most defenseless members of the public by sexually violent predators and child sexual predators, the state has a compelling interest in ensuring compliance with the provisions of law regarding sex offender registration and notification to protect the public from harm as those offenders are released from incarceration and are returned to their communities.
 

 E. The state also has a compelling interest in using its limited resources wisely and monitoring those offenders who pose the greatest risk to the health and safety of our citizens.
 

 F. Therefore, it is the policy of this state to facilitate the identification of those offenders who are sexually violent predators and child sexual predators and to require that those offenders register as sex offenders for life to ensure compliance with those registration and notification requirements by enactment of sex offender assessment panels to evaluate all sex offenders prior to their release from incarceration as provided for in this Chapter.
 

 [4]
 

 . La. R.S. 15:560.4 provides:
 

 A. Each sexual offender determined to be a sexually violent predator or a child sexual predator pursuant to the provisions of this Chapter shall be required to be electronically monitored by the division of probation and parole, Department of Public Safety and Corrections, in a fashion that provides for electronic location tracking.
 

 B. Unless it is determined by the Department of Public Safety and Corrections, pursuant to rules adopted in accordance with the provisions of this Section, that a sexual offender is unable to pay all or any portion of such costs, each sexual offender to be electronically monitored shall pay the cost of such monitoring.
 

 C. The costs attributable to the electronic monitoring of an offender who has been determined unable to pay shall be borne by the department if, and only to the degree that, sufficient funds are made available for such purpose whether by appropriation of state funds or from any other source. Only in the case that a sexual offender determined to be a sexually violent predator or a child sexual predator is unable to pay his own electronic monitoring costs, and there are no funds available to the department to pay for such monitoring, may the requirements of electronic monitoring be waived.
 

 D. The Department of Public Safety and Corrections shall develop, adopt, and promulgate rules, in the manner provided in the Administrative Procedure Act, that provide for the payment of such costs. Such rules shall contain specific guidelines which shall be used to determine the ability of the offender to pay the required costs and shall establish the reasonable costs to be charged. Such rules may provide for a sliding scale of payment so that an offender who is able to pay a portion, but not all of such costs, may be required to pay such portion.
 

 E. (1) A person who fails to comply with the requirements of electronic monitoring shall, upon first conviction, be fined not more than one thousand dollars, imprisoned at hard labor for not less than two years nor more than ten years without benefit of probation, parole, or suspension of sentence.
 

 (2) Upon a second or subsequent conviction, the offender shall be fined three thousand dollars, imprisoned at hard labor for not less than five years nor more than twenty years without benefit of probation, parole, or suspension of sentence.
 

 [5]
 

 . La. R.S. 15:560.3(C) provides: Except as provided in R.S. 15:560.4(E), any person who willfully violates any condition ordered pursuant to the provisions of this Section shall be subject to contempt of court.
 

 La. R.S. 15:560.4(E) provides:
 

 (1) A person who fails to comply with the requirements of electronic monitoring shall, upon first conviction, be fined not more than one thousand dollars, imprisoned at hard labor for not less than two years nor more than ten years without benefit of probation, parole, or suspension of sentence.
 

 (2) Upon a second or subsequent conviction, the offender shall be fined three thousand dollars, imprisoned at hard labor for not less than five years nor more than twenty years without benefit of probation, parole, or suspension of sentence.
 

 [6]
 

 . La. R.S. 15:560.2 provides:
 

 A. The Louisiana Sex Offender Assessment Panel is hereby created within the Department of Public Safety and Corrections. The secretary of the Department of Public Safety and Corrections may create not more than three sex offender assessment panels for purposes of implementing the provisions of this Chapter.
 

 B. Each panel shall consist of three members. The secretary shall select the makeup of the panel based upon the feasibility, practicability, and effectiveness of each panel as determined by the secretary and established by rules adopted pursuant to the provisions of the Administrative Procedure Act and in accordance with the following provisions:
 

 (1) One member shall be either a psychologist licensed by the Louisiana State Board of Examiners of Psychologists or a medical psychologist licensed by the Louisiana State Board of Medical Examiners who has been engaged in the practice of clinical or counseling psychology for not less than three consecutive years or a physician in the employ or under contract to the department whose credentials and experience are not incompatible with the evaluation of the potential threat to public safety that may be posed by a sexually violent predator or a child sexual predator.
 

 (2) One member shall be the secretary of the Department of Public Safety and Corrections or his designee who shall be chairman.
 

 (3) One member shall be the warden, or in his absence the deputy warden, of the institution where the offender is incarcerated, or a probation or parole officer with a minimum of ten years experience, or a retired law enforcement officer with at least five years of experience in investigating sex offenses.
 

 C. A majority of the members of each panel shall constitute a quorum. All official actions of the panel shall require the affirmative vote of a majority of the members of the panel.
 

 D. Each panel shall meet at least once quarterly and upon the call of each chairman or upon the request of any two members.
 

 E. The panels shall review, notwithstanding the provisions of R.S. 15:574.12, pre-sentence reports, prison records, medical and psychological records, information and data gathered by the staffs of the Board of Pardons and the Board of Parole, information provided by the convicted offender, the district attorney, and the assistant district attorney, and any other information obtained by the boards or the Department of Public Safety and Corrections.
 

 F. The panel shall have the duty to evaluate every sex offender and child predator
 
 *458
 
 who is required to register pursuant to the provisions of R.S. 15:542 and who is to be released from the custody of the Department of Public Safety and Corrections on an order of the Board of Parole or the Department of Public Safety and Corrections, office of adult services, or upon expiration of his sentence to determine if he is a sexually violent predator or a child sexual predator in accordance with the provisions of R.S. 15:560.1.
 

 G. The panel shall meet and evaluate each sex offender at least six months prior to the release date of the offender.
 

 H. The panel shall conduct its review and, if a determination is made that the offender may be a sexually violent predator or a child sexual predator, the panel shall forward the recommendation to the sentencing court. Such recommendation shall include the factual basis upon which the recommendation is made and shall include a copy of all information available to the panel pursuant to Subsection E of this Section.
 

 I. Upon receiving a recommendation from the panel, the court, on its own motion, shall schedule a hearing to review the recommendation that an offender is a sexually violent predator or a child sexual predator. Notice of the heating shall be served on the offender where he is located, his attorney of record, the office of the district attorney who prosecuted the offender for the underlying offense, and the victim of the underlying offense provided that the victim is registered pursuant to the provisions of R.S. 46:1841 et seq. The notice shall inform the offender that he has the right to be present at the hearing, that he has the right to present evidence, that he has a right to counsel, and that if indigent, an attorney will be appointed to represent him. If, after a contradictory hearing, the court finds by clear and convincing evidence, that the offender is a sexually violent predator or a child sexual predator, the offender shall be ordered to comply with the provisions of R.S. 15:560.3
 
 et seq.
 

 J.The Department of Public Safety and Corrections shall forward all recommendations of offenders who have been determined to be a sexually violent predator or a child sexual predator prior to August 15, 2009, to the sentencing court for a judicial determination that the offender is a sexually violent predator or child sexual predator in accordance with the provisions of this Section.
 

 [7]
 

 . Mr. Michael Mitchell, District Defender for the 19th Judicial District, also testified. Mr. Mitchell testified regarding his office’s lack of resources to provide representation to offenders before the panels or in the subsequent court hearings.
 

 [8]
 

 . DSM, the
 
 Diagnostic and Statistical Manual of Mental Disorders,
 
 is published by the American Psychiatric Association.
 

 [9]
 

 . Because the court found the statutes to be void for vagueness on these grounds, it declined to consider whether the application of La. R.S. 15:560
 
 et seq.
 
 resulted in an
 
 ex post facto
 
 violation. However, it noted that "[t]he legislation involved in the instant case if [sic] far more intrusive that [sic] those penalties discussed in
 
 Olivieri." (Olivieri v. State,
 
 2000-0172 (La.2/21/01), 779 So.2d 735)
 

 [10]
 

 . The legislature amended La. R.S. 15:560.2 in 2009 to provide, among other things, for a judicial determination following an assessment by the sex offender assessment panel and for a hearing and notice thereof. La. Acts 2009, No. 205.
 

 [11]
 

 . The "clear and convincing evidence” burden of proof is not a foreign concept to Louisiana courts. See, e.g., La. C.C. art. 132 ("In the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent.”);
 
 State v. Edwards,
 
 43,802 (La.App. 2 Cir. 8/7/08), 988 So.2d 850, writ denied, 08-2476 (La.8/20/09), 15 So.3d 1009 (Article governing post-conviction DNA testing is not another form of motion for new trial, based on new evidence which will serve to call the state’s case into question and perhaps warrant a re-trial; the standard applied to the threshold question of DNA testing itself is whether the test results will establish the innocence of the petitioner by clear and convincing evidence.)
 

 [12]
 

 . La. R.S. 15:560.2(1) reads, in pertinent part: If, after a contradictory hearing the court finds by clear and convincing evidence that the offender is a sexually violent predator or a child sexual predator, the offender shall be ordered to comply with the provisions of R.S. 15:560.3
 
 et seq.