# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-842


**EDDIE RAY JACKSON**

**VERSUS**

**STATE OF LOUISIANA**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SEVENTH JUDICIAL DISRICT COURT
PARISH OF CONCORDIA, DOCKET NO. 45574
HONORABLE GLEN W. STRONG, JUDGE AD HOC
**\*\*\*\*\*\*\*\*\*\***

## SYLVIA R. COOKS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John D. Saunders, and Shannon J. Gremillion, Judges.


**REVERSED**.

**Charles E. Griffin, III**
**P.O. Box 1817**
**St. Francisville, LA 70775-1817**
**(225) 635-6890**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Eddie Ray Jackson**

**James D. "Buddy" Caldwell, Louisiana Attorney General**
**Emma Develier, Assistant Attorney General**
**Robert Abendroth, Assistant Attorney General**
**Louisiana Department of Justice**
**P.O. Box 94005**
**Baton Rouge, LA 70804-9005**
**(225) 326-6096**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **State of Louisiana**

**COOKS, Judge.**

On February 16, 1993, Eddie Ray Jackson entered a plea of guilty to "Carnal Knowledge of a Juvenile" pursuant to La.R.S. 14:80. The conviction was based on Jackson, then twenty-three (23) years old, engaging in consensual sex with a female under the age of seventeen (17). Jackson was sentenced to three (3) years with the Louisiana Department of Corrections. The sentence was suspended and Jackson was placed on eighteen (18) months of active supervised probation. At the time of sentencing, it appears Jackson was not informed that he was required to register as a sex offender, nor was it listed as part of his probation. The probation period was successfully completed and Jackson was released from supervision on August 16, 1994.

On August 29, 1994, Jackson again engaged in consensual sex with a female under the age of seventeen (17). That encounter resulted in another plea of guilty to "Carnal Knowledge of a Juvenile" pursuant to La.R.S. 14:80. Pursuant to the plea, Jackson was sentenced to seven and one-half (7½) years with the Louisiana Department of Corrections. The sentence was suspended and Jackson was placed on five (5) years of active supervised probation. The requirement to register as a sex offender was made a condition of his probation, and Jackson registered as a sex offender on June 27, 1995. At that time, under La.R.S. 15:544, the registration period for sex offenders was ten (10) years. Jackson successfully completed his probation and was released from supervision on April 10, 2000.

Even after his probation ended, Jackson continued to re-register as a sex offender until June 26, 2005, when the ten year period elapsed. In December of 2009, Jackson was informed that the State of Louisiana now designated him as a lifetime sex offender due to his multiple convictions. This would require him to re-register every ninety (90) days with local law enforcement and pay fees and

costs associated with registration, publication, and notice. He would also be required to have the words "Sex Offender' stamped on his driver's license and have it re-issued annually. These requirements would remain in effect for life.

Upon receiving the notification, Jackson filed proceedings against the Attorney General of Louisiana, the Concordia Parish Sheriff, the Concordia Parish District Attorney, the Louisiana Department of Public Safety and Corrections, the Louisiana State Police, and the Louisiana Office of Motor Vehicles, seeking to prohibit the State from enforcing these registration requirements against him. In his petition, he asserted that the attempts by the State to apply the amendments to the sex offender registration statutes, which amendments came into effect after Jackson's convictions, after he had satisfied his sentences, and after the ten-year period following his initial registration had lapsed, were unconstitutionally applied to him *ex post facto*. He asked for a judgment from the trial court declaring he did not have to re-register as a sex offender. Specifically, Jackson argued the law in effect at the time of his convictions provided only for a ten (10) year registration period. The State noted that the law was amended subsequent to his convictions to mandate a lifetime registration period for persons convicted of multiple sex offenses. Jackson countered that the amendment creating the lifetime requirement to register did not apply to him because he was convicted prior to July 1, 1997. In support of this argument, Jackson relied on the First Circuit case of *Smith v. State of Louisiana*, 09-1765 (La.App. 1 Cir. 3/26/10), an unpublished opinion, *writs granted*, 10-1140 (La. 9/16/11), 69 So.3d 1133, which held that Act 594 of 1999, which amended La.R.S. 15:542.1(H) to require lifetime registration would only apply to convictions occurring after July 1, 1997. In addition, the First Circuit found subsequent amendments to La.R.S. 15:544 also did not apply to Smith because their application would violate *ex post facto* principles. The trial court

2

found the reasoning in *Smith* to be "convincing," and concluded it would be "fundamentally unfair to require Mr. Jackson to register as a sex offender for life after he has completed the registration requirements initially imposed upon him and after having been released from his probation supervision."

The trial court also held to require him to complete additional probation requirements would "constitute additional punishment and thus would be a violation of the *ex post facto* clauses of the U.S. and Louisiana Constitutions." The court then held the State was prohibited from enforcing the lifetime registration requirements against Jackson. The State has appealed, asserting the trial court erred in holding the provisions of the sex offense registry did not apply to a multiple sex offender who committed his crimes prior to July 1, 1997 and in applying the *Ex Post Facto* Clauses of the U.S. and Louisiana Constitutions despite jurisprudence holding the registration and notification provisions to be non-punitive regulatory schemes.

During the pendency of this appeal, the Louisiana Supreme Court issued *Smith v. State of Louisiana*, 10-1140 (La. 1/24/12), ___ So.3d ___, which reversed the First Circuit's ruling, and held "the 1999 amendment to former La.R.S. 15:542.1, providing for a lifetime obligation to register as a sex offender, applies to Mr. Smith as a multiple sexual offender." *Id.* at p. 18. The supreme court also found there was "no violation of the *ex post facto* clause in the application of the sex offender registration statutes to Mr. Smith." *Id.* at p. 18. Finding the supreme court's opinion in *Smith* governs this matter, the trial court's judgment prohibiting the State from enforcing the lifetime registration requirements against Jackson is reversed.

# ANALYSIS

In Act 388 of 1992, the Louisiana Legislature created its version of a Megan's Law, requiring a registration and notification scheme for persons convicted of certain defined "sex offenses." Chapter 3-B of Title 15 consisting of La.R.S. 15:540 through 15:549 was enacted, requiring all sex offenders to register with the sheriff of the parish in which he resided. At the time of Jackson's arrests and convictions, La.R.S. 15:544 provided for a registration period of ten years for all sex offenders.

In 1999, Act 594 of the Louisiana Legislature amended La.R.S. 15:542.1 to increase the registration periods for certain offenders creating increased durational periods depending on the severity of the offense and the criminal history of the offender. Offenders with a conviction for an "aggravated offense" as defined by La.R.S. 15:541 and offenders with a prior conviction for a "sex offense" were required to register as a sex offender for life. Jackson, as a multiple offender, would be subject under this amendment to lifetime registration.

These periods remained unchanged until 2007 when the legislature amended the statutes to increase the baseline registration period from ten to fifteen years. Multiple and aggravated offenders, as set forth in the 1999 amendment, are still under a lifetime duty to register. An application clause, passed by the legislature with this amendment, states:

> Section 6. The provisions of this Act shall apply to all persons convicted of a sex offense or a criminal offense against a victim who is a minor, as defined in R.S. 15:541, regardless of the date of conviction, with the exception of those persons required to register under previous provision of law whose obligations to register have been fulfilled and extinguished by operation of law. . .

The issue presented in this case is whether the increased duration passed in 1999, is applicable to Jackson. If it is, then he is required to register as a sex

offender for life; if it is not, then his duty to register was fulfilled when the ten year period elapsed in 2005.

## I. *Application of the July 1, 1997 Date.*

The parties agree that a key issue presented in this appeal centers on the language found in the amendment to La.R.S. 15:542.1, by Act No. 594, which went into effect in 1999. The language of the amended statute provides:

> Any person convicted of a sex offense as defined in R.S. 15:541(14.1) or a criminal offense against a victim who is a minor as defined in R.S. 15:541(9) after July 1, 1997, shall have the duty to register and report under the provision of this Chapter.

As it applies to the current law, the 1999 amendment requires lifetime registration for all persons convicted of aggravated and multiple "sex offenses," if their registration period was not extinguished by operation of law. The trial court reasoned, relying on the First Circuit's unpublished opinion in *Smith*, that the July 1, 1997 date contained within the above language applies to "sex offense" as well as "a criminal offense against a victim who is a minor." This same argument was addressed by the supreme court in its opinion in *Smith*, overruling the first circuit, stating in pertinent part:

> The court of appeal found that this amended provision did not apply to Mr. Smith because it appeared in a section in which the duty to register was limited to convictions obtained after July 1, 1997, as provided for in former La. Rev. Stat. 15:542.1(A), while Mr. Smith's convictions occurred in 1995. The State contends the court below erred because the qualifying date "after July 1, 1997" in former La. Rev. Stat. 15:542.1(A) should be construed as modifying "of a criminal offense against a victim who is a minor as defined in La. Rev. Stat. 15:541(14)" and not as modifying "of a sex offense as defined in La. Rev. Stat. 15:542(E)." For the following reasons, we conclude "after July 1, 1997" modifies only the immediately preceding class of offenders in the former La. Rev. Stat. 15:542.1(A), as urged by the State, and not to the entire Subsection, as found by the court of appeal below.
>
> The starting point in the interpretation of any statute is the language of the statute itself. *Cat's Meow, Inc. v. City of New Orleans*, 98-0601, p. 15 (La.10/20/98), 720 So.2d 1186, 1198;

5

*Touchard v. Williams*, 617 So.2d 885 (La.1993). Legislation is the solemn expression of legislative will, and therefore, the interpretation of a law involves primarily the search for the legislature's intent. La. Civ. Code art. 2; *Barbara Landry v. Louisiana Citizens Property Ins. Co.*, 07-1907, p. 20 (La. 5/21/08), 983 So.2d 66, 79; *Detillier v. Kenner Regional Med. Ctr.*, 03-3259, p. 3 (La.7/6/04), 877 So.2d 100, 103. La. Civ. Code art. 9 provides that, when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole, and laws on the same subject matter must be interpreted in reference to each other. La. Rev. Stat. 1:3; La. Civ. Code arts. 12 and 13; *Conerly v. State*, 97-0871, p. 4 (La. 7/8/98), 714 So.2d 709, 711. Where two statutes deal with the same subject matter, they should be harmonized if possible. La. Civ. Code art. 13; *Kennedy v. Kennedy*, 96-0741, p. 2 (La. 11/25/96), 699 So.2d 351, 358 (on rehearing).

The pertinent language of former La. Rev. Stat. 15:542.1(A) at issue here is:

> Any person convicted of a sex offense as defined in R.S. 15:542(E) **or of** a criminal offense against a victim who is a minor as defined in R.S. 15:541(9) after July 1, 1997 shall have the duty to register and report under the provision of this Chapter (Emphasis added).

The statute references La. Rev. Stat. 15:542(E), which defines sex offense and supplies its own pertinent date:

> "Sex Offense" for the purpose of this Chapter means a violation of any provision of Subpart C of Part II, Subpart B of Part IV, or Subpart A(1) or A(4) of Part V, of Chapter 1 of Title 14 of the Louisiana Revised statutes of 1950, *committed on or after June 18, 1992*, or committed prior to June 18, 1992, if the person, as a result of the offense, is under the custody of the Department of Public Safety and Corrections on or after June 18, 1992." (Emphasis added).

Given the plain language of these two statutes, we find that "after July 1, 1997" does not apply to the first part of the sentence in former La. Rev. Stat. 15:542.1(A), which subjected "[a]ny person convicted of a sex offense as defined in La. Rev. Stat. 15:542(E)" to the registration requirements. Not only is that clause separated by the disjunctive "or", but also La. Rev. Stat. 15:542(E) contained its own provision defining sex offenses as those committed after June 18, 1992. This rationale is supported by the fact that, unlike the definition of sex offense in La. Rev. Stat. 15:542(E), the definition of "criminal

6

offense against a victim who is a minor" found in La. Rev. Stat. 15:541(14) did not provide a date. Consequently, the legislature provided for a beginning date applicable to registrants convicted of a "criminal offense against a victim who is a minor" in former La. Rev. Stat. 15:542.1(A). Furthermore, were we to construe the qualifying language "after July 1, 1997" to apply to sex offenses under La. Rev. Stat. 15:542(E), it would render meaningless the June 18, 1992 date found in that very same section, thereby creating a window for sexual offenders not subject to registration. We must assume every word of the statute serves a purpose, because "it will not be presumed that the Legislature inserted idle, meaningless or superfluous language in the statute or that it intended for any part or provision of the statute to be meaningless, redundant or useless." *ABL Management, Inc. v. Board of Sup'rs of Southern Univ.*, 00–0798, p. 6 (La. 11/28/00), 773 So.2d 131. 135 (citing *Bunch v. Town of St. Francisville*, 446 So.2d 1357, 1360 (La. App. 1 Cir. 1984)).

The timing of the legislature in creating the two pertinent offenses, "criminal offense against a victim who is a minor" and "sex offense," further demonstrates the legislature's intent in enacting the statutes. The definition of "criminal offense against a victim who is a minor" set out in La. Rev. Stat. 15:541(14) was created as a category of offender obligated to register in July 1997—the same date that La. Rev. Stat. 15:542.1 was enacted. Prior to July 1997, there was no registration requirement for an offender convicted of a "criminal offense against a victim who is a minor;" therefore, this date correlates directly with the date provided in former La. Rev. Stat. 15:542.1(A). On the other hand, the definition of "sex offense" found in La. Rev. Stat. 15:542(E) was added as a category of offender requiring registration on June 18, 1992. Logically, the July 1, 1997 date does not apply to "sex offense" because it was created five years earlier. Acts 1997, No. 1147 enacted new offenses subject to registration requirements, but it also governed offenses previously subject to registration requirements. Therefore, the 1997 date was intended to ensure that registration would apply prospectively only to the offenses formerly not required to register.

We conclude the July 1, 1997 date in former La. Rev. Stat. 15:542.1(A) is applicable only to persons convicted of a "criminal offense against a victim who is a minor." Because Mr. Smith was twice convicted in 1995 of qualifying sexual offenses, the 1999 amendments to former La. Rev. Stat. 15:542.1 apply to his convictions.

*Smith*, at pp. 6-9.

Under the supreme court's reasoning in *Smith*, the trial court's application of the July 1, 1997 date to both "sex offense" and "criminal offense against a victim

who is a minor" is contrary to the wording of the statute. Therefore, we reverse the trial court's finding to the contrary.

## II. *Ex Post Facto Violation.*

The State also argues the trial court erred in finding any additional probation requirements would "constitute additional punishment" and, thus, would be a violation of the *ex post facto* clauses of the U.S. and Louisiana Constitutions. The trial court again relied on the first circuit opinion in *Smith* in reaching this conclusion. The supreme court also addressed the *ex post facto* clause argument in its opinion, stating:

> It is well-settled that Louisiana's sex offender registration requirements are not punitive, but rather, they are remedial and may be applied retroactively without violating the prohibition of the *ex post facto* clause. In *State ex rel. Olivieri v. State*, 00-172 (La.2/21/01), 779 So.2d 735, this court considered an *ex post facto* challenge to the sex offender registration provisions. We resolved the issue by holding the registration and notification requirements imposed upon sex offenders to be a legitimate, non-punitive regulatory scheme that did not impose punishment. *Id.* pp. 19-20, 779 So.2d at 747. Because such provisions were found to be remedial in nature, we concluded that application of the sex offender registration and notification laws to persons convicted before their enactment does not violate *ex post facto* principles. *Id.* Similarly, in *Doe v. Smith*, 538 U.S. 84, 123 S.Ct. 1140 (2002), the United States Supreme Court determined that Alaska's lifetime registration and notification requirements for sex offenders were non-punitive and, thus, did not violate the *ex post facto* clause.
>
> Most recently, in *State v. Golston*, 10-2804 (La. 7/1/11), 67 So.3d 452, this court upheld the provisions of La. Rev. Stat. 15:560-560.6, governing Sex Offender Assessment Panels (SOAP), against a variety of constitutional challenges. The SOAP provisions entail not only lifetime registration, but also lifetime probation involving electronic monitoring, repeated psychiatric evaluations, and home computer searches. *Id.* In *Golston* this court explained that, because the statutory scheme did not set out criminal provisions but instead constituted a regulatory scheme, much like the registration requirements upheld in *Olivieri,* it was not susceptible to a void-for-vagueness challenge. *Id.* p. 16, 67 So.3d at 463.
>
> After reviewing the foregoing jurisprudence, we find the increase in the number of years Mr. Smith is required to spend as a registered sex offender is not punishment. Accordingly, applying to

Mr. Smith the 1999 amendment to former La. Rev. Stat. 15:542.1 does not violate the *ex post facto* clause.

Similarly, the amendments and provisions added in 2007 and 2008, as well as the 2006 legislation regarding the placement of a restriction code on the offender's driver's license and identification card, are applicable to Mr. Smith without violating the *ex post facto* clause. As we explained in *Olivieri*, p. 20, 779 So.2d at 747, the legislative intent behind the registration statutes is to alert the public for the purpose of public safety, a remedial intent, and not to punish convicted sex offenders. We further explained that, while some of the provisions of the registration statutes may be remotely similar to historical forms of punishment, such as public humiliation, the immediate need for public protection was a corollary of, rather than an addendum to, the punishment of sex offenders. *Id.* pp. 21-22, 779 So.2d at 748. We further recognized that, although the registration statutes imposed the burden of the public and community notification process on convicted sex offenders, which caused them to have to expend money they were not obligated to pay at the time they committed their offenses, the onus placed on them by the legislation did not constitute a separate punishment for their offense, but rather, it imposed a condition of their release on parole or probation. *Id.* p. 24, 779 So.2d at 749. Therefore, we found that any costs associated with the conditions of their release were a necessary part of the regulatory scheme. *Id.* pp. 22-24, 779 So.2d at 748-49.

As we did in *Olivieri,* we find that the sex offender statutes, as amended in 1999, 2006, 2007, and 2008, to the extent they are applicable to Mr. Smith, are not so obtrusive as to deem them punitive rather than remedial or regulatory. While the extension for life of the time period for registration, as well as the added requirement of notations on Mr. Smith's driver's license or identification card, may be harsh, may impact a sex offender's life in a long-lived and intense manner, and also be quite burdensome to the sex offender, we do not find them to constitute an infringement of the principles of *ex post facto. See Olivieri*, p. 24-25, 779 So.2d at 749-50.

*Smith*, at pp. 9-10.

Accordingly, we find our supreme court's pronouncement in *Olivieri*, and affirmed in *Smith*, governs our decision in this matter, and the trial court erred in finding the registration and notification requirements imposed on Jackson were a violation of the *ex post facto* clauses of the United States and Louisiana Constitutions.

9

**DECREE**

For the foregoing reasons, the judgment of the trial court forbidding the State of Louisiana from imposing the requirements of the sex offender registry to Eddie Ray Jackson is reversed.

**REVERSED.**