JAMES F. McKAY III, Chief Judge.
| jThe State appeals the judgment of the trial court granting Leroy Lodge’s, motion to quash the bill of information on December 14, 2011 and finding that the State’s prosecution of the defendant was prohibited by the ex post facto clauses of both the State and Federal constitutions. We find merit to the State’s argument and reverse the judgment of the trial court.
STATEMENT OF CASE
In this consolidated appeal we are addressing 2012-KA-0733, which corresponds to district court number 502-192 “B”, and 2012-KA-0734, which corresponds with district court number 508-450 “B.” Both appeals concern issues of two separate violations of Louisiana’s sex offender registration law, pursuant to La. R.S. 15:540 et seq.
In 1983, Leroy Lodge was convicted of forcible rape, a violation of La. R.S. 14:42.1, and sentenced to twenty years. See State v. Lodge, 447 So.2d 88 (La.App. 4 Cir.1984). Leroy Lodge was incarcerated for this offense from January of 1983 until he was paroled and released in June 1995. In 1999, Leroy Lodge’s parole was revoked on a technical violation of his probation, and he was reincarcerated until his release in 2003. At the time of his commission of the alleged lacrime, and his conviction of the offense, there were no statutes in place in Louisiana that required Leroy Lodge to register as a sexual offender. However, as a condition of his probation, upon his release, he registered as a sex offender pursuant to La. R.S. 15:540 et seq., which in 2003, required registration for a ten year period. We note that on February 14, 2007, the Division of Probation and Parole for the State of Louisiana terminated Leroy Lodge’s period of supervision. He was notified that his case was being transferred to the New Orleans Police Department for registration and notification monitoring. In compliance with La. R.S. 15:540 et seq., after his release in 2003, he continued to register until 2010. In a revision to La. R.S. 15:544(A), the general registration period was extended from ten to fifteen years, which effectively extended Leroy Lodge’s registration obligation.
On May 9, 2011, at a preliminary hearing in magistrate court, Detective Randy Hughes, assigned to the New Orleans Police Department’s Sex Crimes Unit, testified that he reviewed Leroy Lodge’s file on May 26, 2010. He testified that at the time of Leroy Lodge’s September 8, 2009 periodic registration, Leroy Lodge listed his address as 7044 Warfield Street, New Orleans, Louisiana. Upon further review Detective Hughes discovered that Leroy Lodge never returned for his periodic registration update on December 3, 2009, and that Leroy Lodge also failed to report for his March 26, 2010 periodic registration. See La. R.S. 15:542.1.1.
On May 27, 2010, an arrest warrant was issued against Leroy Lodge. On June 28, 2010, Leroy Lodge was arrested. On November 24, 2010, Leroy Lodge was charged by bill of information with a failure to register as a sex offender in viola *854 tion of La. R.S. 15:542(case # 502-192 “B”).
|sOn May 18, 2011, a new warrant for Leroy Lodge’s arrest was issued. According to the warrant application filed by State Trooper Andrew Pratt, an April 26, 2011 compliance check revealed that Leroy Lodge was not living at his registered address.[1] Leroy Lodge was arrested pursuant to this warrant on August 10, 2011. A second bill of information was filed against Leroy Lodge in case number 508-450 “B”, charging Leroy Lodge with failing to provide notification of change of address as a sex offender during the period of April 26 to August 9, 2011, which is a violation of La. R.S. 15:542.1.2., which was enacted in 2007 and became effective in 2008.
On November 21, 2011, the Leroy Lodge filed a motion to quash the bill of information under docket number 502-192 “B” alleging that the State’s prosecution would constitute a violation of the ex post facto clause of both the State and Federal Constitutions. He maintains that he was convicted and had served the punitive portion of his sentence before the enactment of La. R.S. 15:40 et seq., the sexual offender registration act. He asserts that as such, he is being wrongfully prosecuted for a collateral criminal consequence; a failure to register. Leroy Lodge is not challenging the initial retroactive application of the statute in 1995 because it was a condition of his parole. On December 14, 2011, the trial court granted the defendant’s motion to quash, opining that the issue was “right [ripe] for the Fourth Circuit,” and adopted the motion for both cases, numbers 502-192 “B” and 508-450 “B”, and quashed the bills of information for both cases.
|4The State appealed the trial court’s ruling in both cases. On May 29, 2012, the State filed a motion to consolidate the appeals from both trial case numbers. This Court consolidated case numbers 2012-KA-0783 and 2012-0734 on June 5, 2012.
DISCUSSION
In Leroy Lodge’s November 21, 2011 motion to quash, under docket number 502-192 “B”, he maintains that the State’s prosecution is based upon his alleged failure to register under La. R.S. 15:542 et seq., which imposes a lifetime registration obligation on sex offenders, violates the prohibition against the imposition of ex post facto laws in both the Louisiana and Federal Constitutions. In support of his argument he asserts that his case is similar to State v. Smith, 2009-1765 c/w 2009-1169 (La.App. 1 Cir. 3/26/10), 2010 WL 1173071, unpub.
Conversely, the State maintains that the trial court erred in quashing the bill of information in cases 502-192 “B” and 508-450 “B”, as the ex post facto clauses were not violated by charging Leroy Lodge with the revisions to La. R.S. 15:524. The State argues that the First Circuit’s decision in Smith, was reversed by the Louisiana Supreme Court in Smith v. State, 2010-1140 (La.1/24/12), 84 So.3d 487.
Leroy Lodge now argues that his case is distinguishable from Smith because 1) there was no initial sexual offender registration requirement at the time of his conviction; 2) he had fulfilled his requirement to register as a sexual offender as a condition of parole prior to being informed and notified of the new lifetime registration *855 requirement; and 3) he is facing mandatory jail time and fines.
Art. I, § 10 of the United States Constitution prohibits states from passing, and La. Const. Art. I, § 23 prohibits the enactment of, ex post facto laws. See also State ex rel. Olivieri v. State, 2000-0172, 2000-1767 (La.2/21/01), 779 So.2d 735, (analyzing both clauses). Under U.S. Const. Art. I, § 10, four categories of ex post facto laws have been outlined: 1) a law making criminal, and subject to punishment, an activity which was innocent when originally done; 2) a law aggravating a crime or making it a greater crime than it was when originally committed; 3) a law aggravating a crime’s punishment; and 4) a law altering the rules of evidence to require less or different testimony than was required at the time of the commission of the crime. Id. at 1767 p. 11, 779 So.2d at 742, citing Calder v. Bull, 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798). The focus of a federal ex post facto inquiry is whether a legislative change “alters the definition of criminal conduct or increases the penalty by which a crime is punishable.” Olivieri, 2000-0172, 2000-1767, p. 14, 779 So.2d at 743. Accordingly, “the operative factor in determining whether a law falls within the ambit of the ex post facto clause is whether the law can be considered ‘punishment’ or altered the definition of criminal conduct.” Id. The Oli-vieri Court adopted the same analysis under La. Const. Art. I, § 23. Id. at 744. Using this analysis, the Olivieri Court concluded that Louisiana’s sexual offender registration and notification statute “is not so obtrusive that we would find it punitive rather than remedial or regulatory as was the intention of the legislature.” Id. at 749.
In State v. Smith, 2010-1140, p. 14 (La.1/24/12), 84 So.3d 487, 497, the Louisiana Supreme Court found that “the period of time a sex offender is obligated to register may be extended during the time of his original registration period without violating the ex post facto clause.” The Smith Court, on the issue of the ex post facto clause further expounded:
| fiIt is well-settled that Louisiana’s sex offender registration requirements are not punitive, but rather, they are remedial and may be applied retroactively without violating the prohibition of the ex post facto clause. In State ex rel. Olivieri v. State, 00-172 (La.2/21/01), 779 So.2d 735, this court considered an ex post facto challenge to the sex offender registration provisions. We resolved the issue by holding the registration and notification requirements imposed upon sex offenders to be a legitimate, non-punitive regulatory scheme that did not impose punishment. Id., pp. 19-20, 779 So.2d at 747. Because such provisions were found to be remedial in nature, we concluded that application of the sex offender registration and notification laws to persons convicted before their enactment does not violate ex post facto principles. Id. Similarly, in Smith v. Doe, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2002 [2003]), the United States Supreme Court determined that Alaska’s lifetime registration and notification requirements for sex offenders were non-punitive and, thus, did not violate the ex post facto clause.
⅜ ⅝ ⅜ ⅜ ⅜ ⅜
After reviewing the foregoing jurisprudence, we find the increase in the number of years Mr. Smith is required to spend as a registered sex offender is not punishment. Accordingly, applying to Mr. Smith the 1999 amendment to former La.Rev.Stat. 15:542.1 does not violate the ex post facto clause.
Similarly, the amendments and provisions added in 2007 and 2008, as well as *856 the 2006 legislation regarding the placement of a restriction code on the offender’s driver’s license and identification card, are applicable to Mr. Smith without violating the ex post facto clause. As we explained in Olivieri, p. 20, 779 So.2d at 747, the legislative intent behind the registration statutes is to alert the public for the purpose of public safety, a remedial intent, and not to punish convicted sex offenders. We further explained that, while some of the provisions of the registration statutes may be remotely similar to historical forms of punishment, such as public humiliation, the immediate need for public protection was a corollary of, rather than an addendum to, the punishment of sex offenders. Id., pp. 21-22, 779 So.2d at 748. We further recognized that, although the registration statutes imposed the burden of the public and community notification process on convicted sex offenders, which caused them to have to expend money they were not obligated to pay at the time they committed their offenses, the onus placed on them by the legislation did not constitute a separate punishment for their offense, but rather, it imposed a condition of their release on parole or probation. Id., p. 24, 779 So.2d at 749. Therefore, we found that any costs associated with the conditions of their release were a necessary part of the regulatory scheme. Id., pp. 22-24, 779 So.2d at 748-19.
|7As we did in Olivieri, we find that the sex offender statutes, as amended in 1999, 2006, 2007, and 2008, to the extent they are applicable to Mr. Smith, are not so obtrusive as to deem them punitive rather than remedial or regulatory. While the extension for life of the time period for registration, as well as the added requirement of notations on Mr. Smith’s driver’s license or identification card, may be harsh, may impact a sex offender’s life in a long-lived and intense manner, and also be quite burdensome to the sex offender, we do not find them to constitute an infringement of the principles of ex post facto. See Olivieri, p. 24-25, 779 So.2d at 749-50.
Smith, 2010-1140 at pp. 15-17, 84 So.3d at 498-99; See Jackson v. State, 2011-842 (La.App. 3 Cir. 2/15/12), 102 So.3d 784, 790-91.
The procedural history of the Smith case is similar to that of Leroy Lodge’s case.[2] Smith pled nolo contendere to indecent behavior with a juvenile on June 16, 1995, and he pled guilty in another parish to carnal knowledge of a juvenile on July 25, 1995. Smith v. State, 84 So.3d at 489. Smith was released from prison on December 12, 1996, and placed on probation. Id. Smith completed parole in 1998. Id. at 490. The Court found that charging Smith under La. R.S. 15:544, as amended in 2007 and 2008, did not violate the ex post facto clause because the original amendment requiring lifetime registration occurred in 1999 with the enactment of former La. R.S. 15:542.1, within Smith’s original ten year registration period. Id. at 497. In this case, Leroy Lodge was released early in June 1995 from a twenty year sentence issued for a 1983 conviction, but was remanded for a technical violation of his parole and not released until 2003. He is now charged with violating La. R.S. 15:542, between December 3, 2009, and May 26, 2010, which are the dates that he failed to register as required by the stat *857 ute. La. R.S. 15:542 currently states, in pertinent part:
|RA. The following persons shall be required to register and provide notification as a sex offender or child predator in accordance with the provisions of this Chapter:
(1) Any adult residing in this state who has pled guilty to, has been convicted of, or where adjudication has been deferred or withheld for the perpetration or attempted perpetration of, or any conspiracy to commit either of the following:
(a) A sex offense defined in R.S. 15:541, with the exception of those convicted of felony carnal knowledge of a juvenile as provided in Subsection F of this Section; ...
La. R.S. 15:542 was originally enacted in 1992. At the time of Leroy Lodge’s 1995 release La. R.S. 15:544(A) mandated that a person required to register under La. R.S. 15:542 must do so for ten years from release from confinement or imprisonment. (West 1996). Under that version of the statute, Leroy Lodge was obligated to comply with registration requirements until June 2005.
The State points to La. R.S. 15:542.1(H)(3), which provided that persons convicted of an aggravated offense must register for life. However La. R.S. 15:542.1(H)(3) was repealed by Acts 2007, No. 460, prior to the period of the charged offense-December 3, 2009 to May 26, 2010. Nevertheless, Acts 2007, No. 460 also extended the general registration period in La. R.S. 15:544(A) from ten to fifteen years, which effectively extended the period of Leroy Lodge’s registration obligation.
Acts 1999, No. 594 enacted La. R.S. 15:541(17), which have been revised, defined an aggravated offense as including “any offense where the offender engages in sexual acts involving penetration with any victim through the use of force or threats of serious violence.” Act 594 also enacted La. R.S. 15:542.1(H)(3), which provided: “The following persons shall be required to register for 19life: (a) Any person with a prior conviction for an offense for which registration under this Chapter is required, (b) Any person convicted of an aggravated offense as defined.”
It is not disputed in this case that Leroy Lodge was convicted of forcible rape in 1983. Because Leroy Lodge was convicted of forcible, he was part of the class of persons required to register for life under Acts 1999, No. 594. Thus, Leroy Lodge’s conviction for the aggravated crime of forcible rape fits under this provision, and he was required to register under the dictates of La. R.S. 15:542(B) and (C), as the law currently stands.
Based on the applicable jurisprudence from our Louisiana Supreme Court holdings, as cited above in Smith, and Olivieri and the holding of the Louisiana Third Circuit Court of Appeal in Jackson, we find that the trial court erred in quashing the bill of information based on the theory that the registration requirement imposed on Leroy Lodge was a violation of the ex post facto clause in this matter.
In Leroy Lodge’s case, the period of time for registration as a sexual offender pursuant to La. R.S. 15:542 et sec, was extended to a lifetime registration with the appropriate authority and subject to all of the amended requirements of the statute. Although the numerous changes to these enhancement provisions may seem harsh and burdensome, we cannot find that they constituted any infringement of the principles of ex post facto. However, while we fully agree that the sexual offender registration statutes serve a paramount governmental interest, we *858 cannot ignore the onerous nature of the ever changing requirements that the legislature has imposed on offenders. The Legislature may just be tweaking the law dangerously 110close to the level of becoming punitive in nature. Nevertheless, we are in harmony and agreement with the prior jurisprudence on this issue.
Additionally, Leroy Lodge is also charged in this consolidated matter, case # 508-450 “B”, with violating La. R.S. 15:542.1.2, for a failure to notify, between April 26 and August 9, 2011. The applicable statute requires notification to law enforcement of changing address, residence, or other registration information.
 The trial court erred in granting the motion to quash as the motion had not been filed in writing. La.C.Cr.P. art. 536 mandates that “[a] motion to quash shall be in writing, signed by the defendant or his attorney, and filed in open court or in the office of the clerk of court.” Moreover, “[i]t shall specify distinctly the grounds on which it is based.” Id. Finally, “[t]he court shall hear no objection based on grounds not stated in the motion.” A trial court cannot quash a bill of information where no written motion to quash is filed. State v. Dixon, 2010-1279, p. 3 (La.App. 4 Cir. 5/2/11), 64 So.3d 852, 854. The record in this case does not include a written motion to quash the bill of information in case number 508-450. The trial court allowed Leroy Lodge to “adopt” his motion to quash filed in case number 502-192 “B” for case number 508-450 “B”. This action exceeded the trial court’s discretion and was error. Accordingly, we reverse the trial court judgment in case number 504-450 “B”.
CONCLUSION
For the reasons state above, we reverse the trial court’s judgment and remand the matter for further proceedings consistent with this opinion.
REVERSED AND REMANDED

. According to the application, the house at the registered address was destroyed by Hurricane Katrina. Leroy Lodge's brother, Curtis Lodge, lived on the property in a trailer. Although, Leroy Lodge had also lived in a trailer on the property, Curtis Lodge lost contact with Leroy Lodge after his trailer was removed from the premises.

. In the instant matter, as distinguishable from Smith who was convicted of carnal knowledge of a juvenile, Leroy Lodge was convicted of forcible rape. Smith was a multiple offender, Leroy Lodge was not. However, this is a distinction without a difference as both require registration.