# Supreme Court of Louisiana

The Opinions handed down on the 11th day of December, 2019, are as follows:

# Supreme Court of Louisiana

**PER CURIAM:**

*2019-KA-01061*    *STATE OF LOUISIANA VS. HUNTER FUSSELL* (Parish of St. Tammany)

We find defendant here failed to carry that burden of showing that Children's Code art. 305(A) is unconstitutional. Accordingly, we vacate the district court's ruling, which declared Article 305(A) unconstitutional and quashed defendant's transfer to the district court, and we remand to the district court for further proceedings consistent with the views expressed here.

VACATED AND REMANDED.

Chief Judge Susan M. Chehardy of the Court of Appeal, Fifth Circuit, heard this case as Justice pro tempore, sitting in the vacant seat for District 1 of the Supreme Court. She is now appearing as an ad hoc for Justice William J. Crain.

Retired Judge James Boddie Jr., appointed Justice ad hoc, sitting for Justice Marcus R. Clark.

Johnson, C.J., dissents and assigns reasons.

Hughes, J., dissents for the reasons assigned by Johnson, C.J.

Chehardy, J., dissents for the reasons assigned by Johnson, C.J.

**SUPREME COURT OF LOUISIANA**

**No. 2019-KA-01061**

**STATE OF LOUISIANA**

**versus**

**HUNTER FUSSELL**

**ON APPEAL FROM THE TWENTY-SECOND JUDICIAL DISTRICT COURT, PARISH OF ST. TAMMANY**

**PER CURIAM:***

Children's Code article 305(A), pertaining to divestiture of juvenile court jurisdiction and original criminal court jurisdiction over children, provides:

> A. (1) When a child is fifteen years of age or older at the time of the commission of first degree murder, second degree murder, aggravated or first degree rape, or aggravated kidnapping, he is subject to the exclusive jurisdiction of the juvenile court until either:
>
> (a) An indictment charging one of these offenses is returned.
>
> (b) The juvenile court holds a continued custody hearing pursuant to Articles 819 and 820 and finds probable cause that he committed one of these offenses, whichever occurs first. During this hearing, when the child is charged with aggravated or first degree rape, the court shall inform him that if convicted he shall register as a sex offender for life, pursuant to Chapter 3-B of Title 15 of the Louisiana Revised Statutes of 1950.
>
> (2) Thereafter, the child is subject to the exclusive jurisdiction of the appropriate court exercising criminal jurisdiction for all subsequent procedures, including the review of bail applications, and the court exercising criminal jurisdiction may order that the child be transferred to the appropriate adult facility for detention prior to his trial as an adult.

Defendant Hunter Fussell was indicted for a first degree rape of a victim under the

---

*Chief Judge Susan M. Chehardy of the Court of Appeal, Fifth Circuit, heard this case as Justice pro tempore, sitting in the vacant seat for District 1 of the Supreme Court. She is now appearing as an ad hoc for Justice William J. Crain. Retired Judge James Boddie Jr., appointed Justice ad hoc, sitting for Justice Marcus R. Clark.

age of thirteen, La.R.S. 14:42(A)(4), that he was alleged to have committed on or shortly after his fifteenth birthday. At that point, pursuant to Article 305(A), defendant became subject to the exclusive jurisdiction of the Twenty-Second Judicial District Court exercising its criminal jurisdiction.

Defendant filed motions contending that the automatic transfer provision of Article 305(A) violates several constitutional provisions, both state and federal, as well as evolving United States Supreme Court jurisprudence recognizing the special characteristics of juveniles that can affect their capabilities and culpability. In response, the district court ultimately ruled that this automatic transfer provision violates due process and that a transfer hearing, comparable to the one provided in Children's Code art. 862,[1] is constitutionally required before a juvenile can be

---

[1] Children's Code art. 862 provides:

> A. In order for a motion to transfer a child to be granted, the burden shall be upon the state to prove all of the following:
>
> (1) Probable cause exists that the child meets the requirements of Article 857.
>
> (2) By clear and convincing proof, there is no substantial opportunity for the child's rehabilitation through facilities available to the court, based upon the following criteria:
>
> (a) The age, maturity, both mental and physical, and sophistication of the child.
>
> (b) The nature and seriousness of the alleged offense to the community and whether the protection of the community requires transfer.
>
> (c) The child's prior acts of delinquency, if any, and their nature and seriousness.
>
> (d) Past efforts at rehabilitation and treatment, if any, and the child's response.
>
> (e) Whether the child's behavior might be related to physical or mental problems.
>
> (f) Techniques, programs, personnel, and facilities available to the juvenile court which might be competent to deal with the child's particular problems.
>
> B. The court shall state for the record its reasons for judgment.
>
> C. (1) The court shall transmit the order rendered after the hearing or a certified copy thereof, without delay, to the clerk of court having jurisdiction of the offense.

transferred to a district court exercising criminal jurisdiction. In reaching those conclusions, the district court relied on United States Supreme Court jurisprudence holding that juveniles are constitutionally different from adults for purposes of sentencing.[2] The district court also relied heavily on *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), for the propositions that transfer from juvenile court imposes a significant deprivation of liberty and therefore warrants protection under the due process clause, and that a transfer from juvenile court should not occur unless the due process protections provided to juveniles are satisfied. A probable cause determination based solely on the nature of the offense alleged and evidence defendant committed the offense is inadequate to satisfy due process, the district court found, without a judicial determination that the juvenile will not benefit from the special protections and opportunities for rehabilitation offered by the juvenile court. The district court also found that a juvenile who is subject to the automatic transfer provision is denied the equal protection of law. Thus, the district court quashed the transfer of defendant from the juvenile to district court.

Because the district court declared the automatic transfer provision of Article 305(A) to be unconstitutional, that declaration is appealable to this court

---

(2) Any party may request the court to provide a complete or partial transcript of the testimony of the witnesses; however, neither the record of the hearing nor the reasons for the transfer shall be admissible in evidence in any subsequent criminal proceedings, except for the purpose of impeachment of a witness.

[2] *See generally Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1, 29 (2005) (holding the Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed.); *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (holding the Constitution prohibits the imposition of life without parole sentences on juvenile offenders convicted of a non-homicide offense); *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) (holding that mandatory life imprisonment without parole for juvenile homicide offenders violates Eighth Amendment prohibition against cruel and unusual punishment).

pursuant to La. Const. Art. V, § 5(D). Before determining the correctness of the trial court's declaration, this court must first decide whether the issue of constitutionality was properly raised below. "[A] constitutional challenge may not be considered by an appellate court unless it was properly pleaded and raised in the trial court below." *State v. Hatton*, 07-2377, p. 13 (La. 7/1/08), 985 So.2d 709, 718. In *Hatton*, the court described the proper procedure for challenging the constitutionality of a statute, expressing the challenger's burden as a three-step analysis. "First, a party must raise the unconstitutionality in the trial court; second, the unconstitutionality of a statute must be specially pleaded; and third, the grounds outlining the basis of unconstitutionality must be particularized." *Id.*, 07-2377, p. 14, 985 So.2d at 719.

In the present case, a review of the record shows that defendant properly raised, pleaded, and particularized his challenge under the Due Process Clause, and its state constitution counterpart, and the district court's declaration of unconstitutionality on that ground is properly before this court on appeal. Defendant's equal protection challenge, however, was not specially pleaded.[3] Nonetheless, we will briefly address equal protection for the sake of completeness and expediency.

This court held that when a statute classifies persons on the basis of any of the six enumerated grounds in La. Const. Art. I § 3, including age, the statute is unconstitutional unless the proponents are able to prove that the legislative

---

[3] Defendant contended in his motion filed in the district court (which is nearly identical to his motion filed earlier in the juvenile court) that "Louisiana's Children's Code Art. 305 violates the Fourteenth Amendment Due Process Clause and the Eighth Amendment of the United States Constitution, Article I, Section 2, 16, 19, 20 and 22 of the Louisiana State Constitution, . . . and goes against the spirit of United States Supreme Court Case law . . . ." Nowhere in that filing does defendant mention the Equal Protection Clause (or its state counterpart in La. Const. Art. I § 3). Defendant's first mention of equal protection is during argument at the hearing on his motion.

4

classification "substantially furthers an appropriate state purpose." *Manuel v. State*, 95-2189, p. 4 (La. 3/8/96), 692 So.2d 320, 323, quoting *Sibley v. Board of Supervisors of Louisiana State University*, 477 So.2d 1094, 1108 (La. 1985). Defendant here contends that the automatic transfer provision draws a suspect age-based distinction between juveniles that not only fails to further an appropriate state purpose but defeats one—i.e., the rehabilitative purpose of having a separate juvenile court system—because the transfer is automatic without regard to whether the juvenile could benefit from the rehabilitative opportunities afforded by a juvenile court. However, in scrutinizing La.R.S. 13:1570(A)(5),[4] which was a predecessor to Article 305(A), this court found that provision furthered the state's interest in protecting the public from serious, violent felonies. *State v. Perque*, 439 So.2d 1060, 1064 (La. 1983); *see also State v. Leach*, 425 So.2d 1232, 1236–37 (La. 1983) ("In the instant case the classifications embodied are not arbitrary and bear a rational relationship to a legitimate state interest, the protection of its citizens by exposing older minors who are accused of committing serious and

---

[4] This statute, which pertained to the jurisdiction of the juvenile courts and became effective September 12, 1980, provided:

> Except as otherwise provided herein, the [juvenile] court shall have exclusive original jurisdiction in proceedings:
>
> A. Concerning any child whose domicile is within the parish or who is found within the parish:
>
> . . .
>
> (5) Who violates any law or ordinance, except a child who, after having become fifteen years of age or older is charged with having committed first degree murder, second degree murder, manslaughter, aggravated rape, or a person who, after becoming sixteen years of age or older, is charged with having committed armed robbery, aggravated burglary, or aggravated kidnapping. Once such a child has been charged with having committed any offense listed in this Paragraph, the district court shall retain jurisdiction over his case, even though the child pleads guilty to, or is convicted of, a lesser included offense, and a plea to, or conviction of, a lesser included offense shall not revest the court exercising juvenile jurisdiction of such a child.

violent felonies to the usual procedures and sanctions of the state's criminal law system."). Defendant fails to persuade the court erred there (even if this claim was properly before the court now). The automatic transfer provision is the product of the balancing of policy considerations involving not only those relating to the special treatment of juveniles but also public safety. It is the prerogative of the legislature to engage in this balancing calculus.

The *Perque* decision also informs our analysis of due process. In *Perque*, this court discussed *Kent v. United States*, which figures prominently in defendant's arguments and the district court's reasons here. The juvenile court in *Kent* opted to waive its jurisdiction over a 16-year-old child without holding a hearing, making any findings, or providing any reason for the waiver. The United States Supreme Court found the waiver invalid because it violated the procedures established by statute in that jurisdiction. *Kent*, 383 U.S. at 557, 86 S.Ct. at 1055. The Supreme Court's statutory interpretation was informed by "constitutional principles relating to due process and assistance of counsel." *Id.* The Supreme Court noted that the juvenile's right to assistance of counsel in conjunction with the waiver would be "meaningless—an illusion, a mockery—unless counsel is given the opportunity to function" at a waiver hearing. *Kent*, 383 U.S. at 561, 86 S.Ct. at 1057. In addition, the Supreme Court found the waiver hearing "must measure up to the essentials of due process and fair treatment." *Kent*, 383 U.S. at 562, 86 S.Ct. at 1057; *see also Application of Gault*, 387 U.S. 1, 12–13, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527 (1967). In *Perque*, we distinguished the statutory framework in *Kent* from that under the predecessor to Article 305(A):

> The situation in the case at bar, however, is easily distinguishable from that in *Kent*. In this case, there are no statutory rights of which defendants are being deprived. Once a sixteen-year-old is charged

6

with armed robbery, the question is not one of "transfer" of jurisdiction. Rather, the juvenile court is automatically divested of jurisdiction. This divestiture is not a matter of discretion on the part of the juvenile court or the district attorney, but is controlled by the statute defining the jurisdiction of the juvenile courts, La.R.S. 13:1570 A(5).

Since the defendants are not being deprived of "important statutory rights," the question is not one of due process, but of whether La.R.S. 13:1570 A(5) is a valid exercise of the State's police powers. We have already held that classifications by age and seriousness of the offense are not arbitrary or capricious, and that the classifications bear a rational relationship to the legitimate state interest of protecting the public from serious, violent felonies. *State v. Leach, supra*. Further, since the legislative intent is clearly that those fifteen and sixteen year olds charged with the enumerated offenses be treated in all respects as adults, we see no reason to depart from the rule that the district attorney has "entire charge and control of every criminal prosecution instituted and pending in his district, and determines whom, when and how he shall prosecute."

*Perque*, 439 So.2d at 1064 (citations omitted).

Defendant here contends our analysis in *Perque* is rendered obsolete by more recent United States Supreme Court jurisprudence, such as *Roper v. Simmons*, *Graham v. Florida*, and *Miller v. Alabama*, which recognizes that juveniles are developmentally different from adults and therefore must be treated differently from adults. Those decisions, however, are based on the Eighth Amendment's prohibition against cruel and unusual punishments and address the importance of considering the unique characteristics of juveniles in sentencing.[5] None have declared that a juvenile has a liberty interest in juvenile court adjudication that requires certain procedural due process before the juvenile can be tried as an adult. While we recognize the importance and necessity that juveniles

---

[5] Defendant also cites *J.D.B. v. North Carolina*, 564 U.S. 261, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011), which (while not grounded in the Eighth Amendment) held that "so long as the child's age was known to the officer at the time of police questioning, or would have been objectively apparent to a reasonable officer, its inclusion in the [*Miranda*] custody analysis is consistent with the objective nature of that test." *J.D.B.*, 564 U.S. at 277, 131 S.Ct. at 2406.

receive individualized sentencing determinations, we do not agree with the district court that the same principles also apply pretrial to require a waiver hearing focused on a juvenile's potential for rehabilitation,[6] which overrides the legislature's decision as to how to structure the jurisdiction of the juvenile courts.

Unlike in *Kent*, the Louisiana legislature has not provided certain juvenile offenders with a statutorily protected liberty interest in juvenile court adjudication but instead has specifically denied such when the juvenile is accused of a violent and serious felony. Therefore, defendant, as a 15-year-old charged with first degree rape, does not have the same statutorily protected liberty interest in juvenile court adjudication as the juvenile in *Kent*, which would entitle him to procedural due process through a transfer hearing before he could be subjected to adult court jurisdiction. The juvenile court here is not vested with the discretion to retain or waive jurisdiction. Instead, the Louisiana legislature has made the divesture of jurisdiction mandatory, and defendant is now "subject to the exclusive jurisdiction of the appropriate court exercising criminal jurisdiction for all subsequent procedures[.]" La.Ch.C. art. 305(A)(2).

Finally, we note that the state constitution specifically authorizes the legislature to create a provision like Article 305(A):

> The determination of guilt or innocence, the detention, and the custody of a person who is alleged to have committed a crime prior to his seventeenth birthday shall be pursuant to special juvenile procedures which shall be provided by law. However, the legislature may (1) by a two-thirds vote of the elected members of each house provide that special juvenile procedures shall not apply to juveniles arrested for having committed first or second degree murder,

---

[6] In fact, in *Miller v. Alabama* the Supreme Court appeared somewhat skeptical of a judge's ability to determine a juvenile's potential for rehabilitation at the pretrial transfer-stage: "Even when States give transfer-stage discretion to judges, it has limited utility. . . . [T]he decisionmaker typically will have only partial information at this early, pretrial stage about either the child or the circumstances of the offense." *Miller*, 567 U.S. at 488, 132 S.Ct. at 2474.

manslaughter, aggravated rape, armed robbery, aggravated burglary, aggravated kidnapping, attempted first degree murder, attempted second degree murder, forcible rape, simple rape, second degree kidnapping, a second or subsequent aggravated battery, a second or subsequent aggravated burglary, a second or subsequent offense of burglary of an inhabited dwelling, or a second or subsequent felony-grade violation of Part X or X-B of Chapter 4 of Title 40 of the Louisiana Revised Statutes of 1950, involving the manufacture, distribution, or possession with intent to distribute controlled dangerous substances, and (2) by two-thirds vote of the elected members of each house lower the maximum ages of persons to whom juvenile procedures shall apply, and (3) by two-thirds vote of the elected members of each house establish a procedure by which the court of original jurisdiction may waive special juvenile procedures in order that adult procedures shall apply in individual cases. The legislature, by a majority of the elected members of each house, shall make special provisions for detention and custody of juveniles who are subject to the jurisdiction of the district court pending determination of guilt or innocence.

La. Const. Art. V § 19. Article 305 was originally enacted as part of Acts 1991, No. 235, which originated as HB 939. By passing Article 305, the legislature "provide[d] that special juvenile procedures shall not apply to" persons who have been arrested and subsequently indicted for aggravated (now first degree) rape, among other enumerated crimes. Given that the state constitution contains an explicit grant of authority, it is difficult to conclude the legislature violated the state constitution when it exercised that authority.

Statutes are presumed constitutional, and any doubt is to be resolved in the statute's favor. *State v. Fleury*, 01-0871, p. 5 (La. 10/16/01), 799 So.2d 468, 472; *State v. Brenner*, 486 So.2d 101, 103 (La. 1986); *Theriot v. Terrebonne Parish Police Jury*, 436 So.2d 515, 520 (La. 1983). This court has consistently held that such presumptively constitutional legislative enactments should be upheld when possible. *State v. Caruso*, 98-1415, p. 1 (La. 3/2/99), 733 So.2d 1169, 1170. The party challenging the constitutionality of a statute bears a heavy burden in proving that statute unconstitutional. *State v. Brooks*, 541 So.2d 801, 811 (La. 1989). The

9

constitutionality of the predecessor to Article 305 has been repeatedly upheld by this Court. *See State v. Foley*, 456 So.2d 979, 981 (La. 1984); *State v. Perique, supra*; *State v. Leach, supra*. Likewise, for the reasons above, we find defendant here failed to carry that burden of showing that Article 305(A) is unconstitutional.

Accordingly, we vacate the district court's ruling, which declared Children's Code art. 305(A) unconstitutional and quashed defendant's transfer to the district court, and we remand to the district court for further proceedings consistent with the views expressed here.

**VACATED AND REMANDED**

12/11/19

SUPREME COURT OF LOUISIANA

No. 2019-KA-01061

STATE OF LOUISIANA

VS.

HUNTER FUSSELL

ON APPEAL FROM THE 22ND JUDICIAL DISTRICT COURT,
PARISH OF ST. TAMMANY

**JOHNSON, Chief Justice, dissents and assigns reasons.**

Because I agree with the district court that Louisiana Children's Code article

305(A) is unconstitutional, I must respectfully dissent.

La. Ch. C. art. 305(A) provides, in relevant part (emphasis added):

> A. (1) **When a child is fifteen years of age or older at the time of the commission of** first degree murder, second degree murder, aggravated or **first degree rape**, or aggravated kidnapping, **he is subject to the exclusive jurisdiction of the juvenile court until** either:
>
> (a) **An indictment charging one of these offenses is returned**.
>
> (b) The juvenile court holds a continued custody hearing pursuant to Articles 819 and 820 and finds probable cause that he committed one of these offenses, whichever occurs first. During this hearing, when the child is charged with aggravated or first degree rape, the court shall inform him that if convicted he shall register as a sex offender for life, pursuant to Chapter 3-B of Title 15 of the Louisiana Revised Statutes of 1950.
>
> (2) **Thereafter, the child is subject to the exclusive jurisdiction of the appropriate court exercising criminal jurisdiction for all subsequent procedures**, including the review of bail applications, and the court exercising criminal jurisdiction may order that the child be transferred to the appropriate adult facility for detention prior to his trial as an adult.

Hunter Fussell was 15 years and four days old when he was arrested and charged with

first degree rape, indecent behavior with a juvenile, and sexual battery. He was

therefore subject to the exclusive jurisdiction of the juvenile court pursuant to Article

1

305(A)(1). However, because a grand jury subsequently returned an indictment charging Hunter with one count of first degree rape, Article 305(A)(2) mandated that he was thereafter automatically subject to the jurisdiction of the district court (referred to as "adult court" herein). In my view, this statutory mandate violates the Fourteenth Amendment Due Process Clause and violates the fundamental principles underlying United States Supreme Court jurisprudence set forth in *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed. 2d 1 (2005), *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed. 2d 825 (2010), *J.D.B. v. North Carolina*, 564 U.S. 261, 131 S.Ct. 2394, 180 L.Ed. 2d 310 (2011), and *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed. 2d 407 (2012).

Under the Fourteenth Amendment of the United States Constitution and Article I, §2 of the Louisiana Constitution, a citizen is protected against deprivations of life, liberty, or property without "due process of law." Procedural due process requires that before an individual is deprived of a property or liberty right, the individual must be provided with notice and an opportunity to be heard. *State v. Golston*, 10-2804 (La. 7/1/11); 67 So. 3d 452, 463. This court has held "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *State v. Bazile*, 12-2243 (La. 5/7/13), 144 So. 3d 719, 732.

La. Const. art. V, § 19 provides special procedures for juveniles alleged to have committed crimes before the age of 17, yet also sets forth a procedure to allow the legislature to provide that such special procedures will not apply in certain circumstances. La. Const. art. V, § 19 states (emphasis added):

> The determination of guilt or innocence, the detention, and the custody of a person who is alleged to have committed a crime prior to his seventeenth birthday shall be pursuant to special juvenile procedures which shall be provided by law. However, **the legislature may** (1) by a two-thirds vote of the elected members of each house **provide that special juvenile procedures shall not apply to juveniles arrested for**

2

**having committed**…**aggravated rape**…and (2) by two-thirds vote of the elected members of each house lower the maximum ages of persons to whom juvenile procedures shall apply, and (3) by two-thirds vote of the elected members of each house establish a procedure by which the court of original jurisdiction may waive special juvenile procedures in order that adult procedures shall apply in individual cases. The legislature, by a majority of the elected members of each house, shall make special provisions for detention and custody of juveniles who are subject to the jurisdiction of the district court pending determination of guilt or innocence.

Article 305(A) was enacted by the legislature pursuant to this constitutional authority. Notably and relevant to this case, Article 305(A) did not track the language of Article V, § 19 in that it does not provide that special juvenile procedures shall not apply to juveniles **arrested for** first degree (aggravated) rape. Rather, Article 305(A) specifically mandates such juveniles are subject to juvenile court jurisdiction (making special juvenile procedures applicable) until an indictment is returned, or until the court holds a continued custody hearing and finds probable cause. Thus, although the legislature provided for the divestiture of juvenile court jurisdiction in certain situations, it also chose to vest jurisdiction initially in the juvenile court in those same situations.

A comprehensive juvenile system was established by the Louisiana Legislature to protect and rehabilitate juvenile offenders and to "insure that he shall receive...the care, guidance, and control that will be conducive to his welfare and the best interests of the state...." *In re State ex rel. A.J.*, 09-0477 (La. 12/1/09), 27 So. 3d 247, 267; La. Ch. C. art. 801. This court has recognized that "the hallmark of the juvenile system was its disposition, individually tailored to address the needs and abilities of the juvenile in question, and the unique nature of the juvenile system is manifested in its non-criminal, or 'civil,' nature, its focus on rehabilitation and individual treatment rather than retribution, and the state's role as parens patriae in managing the welfare of the juvenile in state custody." *A.J.*, 27 So. 3d at 267 (internal quotations and

3

citations removed). The special procedures applicable to juvenile adjudication proceedings confer special rights and immunities. For instance, juvenile records are confidential (regrettably, Hunter has already lost this right); juveniles are typically not jailed with adults; juveniles are not confined past the age of 21; and juveniles are protected from the stigma of a permanent criminal record. These special rights necessarily emphasize rehabilitation over punishment, and provide a far better opportunity for rehabilitation at a much lower cost to the state than a convicted adult. In this case, Hunter was arrested on December 14, 2018, and was initially subject to the exclusive jurisdiction of the juvenile court. Thus, he was statutorily vested with all of the attendant benefits and rights to special procedures and had a liberty interest in his status as a juvenile, subject to juvenile court jurisdiction. To take away these rights and benefits by mandating an automatic divestiture of juvenile court jurisdiction after the grand jury handed down the indictment on February 27, 2019, implicates due process concerns.

The lack of a hearing vitiates the due process standards mandated by the Supreme Court in *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed. 2d 84 (1966). In *Kent*, the Court recognized the import of transferring juveniles to the adult system:

> [T]here is no place in our system of law for reaching a result of such tremendous consequences without ceremony-without hearing, without effective assistance of counsel, without a statement of reasons. It is inconceivable that a court of justice dealing with adults, with respect to a similar issue, would proceed in this manner. It would be extraordinary if society's special concern for children, as reflected in the District of Columbia's Juvenile Court Act, permitted this procedure. We hold that it does not.

383 U.S. at 554. While the majority essentially limits application of *Kent* based on the specific language of the D.C. statute involved, I do not find it should be read so narrowly. *Kent*, especially when read in conjunction with the Court's subsequent

4

opinion in *Application of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed. 2d 527 (1967), prescribes constitutional duties by finding that a determination by a juvenile court on the issue of whether it should waive jurisdiction over a juvenile is a critical stage in a criminal proceeding, and therefore requires a hearing conforming to the basic requirements of due process. As stated by the Court in *Gault*, "In *Kent v. United States*…we considered the requirements for a valid waiver of the 'exclusive' jurisdiction of the Juvenile Court of the District of Columbia so that a juvenile could be tried in the adult criminal court of the District. Although our decision turned upon the language of the statute, we emphasized the necessity that 'the basic requirements of due process and fairness' be satisfied in such proceedings." 387 U.S. at 12. The decision in *Kent* rested on the crucially important distinction between the treatment afforded children in an adult court and that granted them in juvenile court. Although the *Kent* decision was partially based on the particular statute, it is clear to me the Court did not intend to limit the protections solely based on the procedural aspects of that case. Here, the majority contends Hunter "does not have the same statutorily protected liberty interest in juvenile court adjudication as the juvenile in *Kent*...," but the relevant due process concerns do not disappear simply because Article 305(A) does not provide for a hearing as did the statute at issue in *Kent*. The fact that our legislature made the divestiture of jurisdiction mandatory does not eliminate due process concerns, and the impact on the juvenile remains the same. *Kent* and *Gault* considered together make it clear that juvenile court proceedings affecting a juvenile's substantial rights must measure up to the essentials of due process and fair treatment. I find that juvenile offenders have a constitutionally protected liberty interest in their status as a juvenile, subject to juvenile court jurisdiction. As a result, procedural due process mandates that juvenile offenders are entitled to a meaningful hearing before they can be removed from the jurisdiction of the juvenile court and

5

subjected to adult court jurisdiction pursuant to Article 305(A).

I recognize this court has previously upheld the constitutionality of Louisiana's juvenile jurisdiction statutory scheme in both *State v. Leach*, 425 So. 2d 1232 (La. 1983) and *State v. Perique*, 439 So. 2d 1060 (La. 1983). However, I find it relevant that these cases directly addressed La. R.S. 13:1570(A)(5), the predecessor to Article 305(A). That statute established adult court jurisdiction for juveniles fifteen years or older who were charged with certain enumerated offenses.[1] Thus, this case is the first wherein our court has addressed the constitutionality of Article 305(A), which establishes juvenile court jurisdiction at the time a juvenile is arrested and charged until an indictment is returned or the juvenile court makes a finding of probable cause. Unfortunately, the majority erroneously finds Article 305(A) constitutional.

Moreover, even if our earlier decisions in *Leach* and *Perique* are directly relevant to our analysis of the constitutionality of Article 305(A), the district court correctly noted those decisions should be revisited in light of subsequent developments in case law, science, and policy. Most importantly, our understanding of juvenile behavior has evolved over time since those decisions were issued. In recent years, the United States Supreme Court has recognized and reinforced the special status of juveniles in a series of cases discussing the culpability of juvenile

---

[1] La. R.S. 13:1570(A)(5) provided:

Except as otherwise provided herein, the court shall have exclusive original jurisdiction in proceedings:

A. Concerning any child whose domicile is within the parish or who is found within the parish:

(5) Who violates any law or ordinance, except a child who, after having become fifteen years of age or older is charged with having committed first degree murder, second degree murder, manslaughter, aggravated rape, or a person who, after becoming sixteen years of age or older, is charged with having committed armed robbery, aggravated burglary, or aggravated kidnapping. Once such a child has been charged with having committed any offense listed in this Paragraph, the district court shall retain jurisdiction over his case, even though the child pleads guilty to, or is convicted of, a lesser included offense, and a plea to, or conviction of, a lesser included offense shall not revest the court exercising juvenile jurisdiction of such a child.

6

offenders.

In *Roper v. Simmons*, *supra*, the Court held the Constitution bars capital punishment for juvenile offenders. Noting that the death penalty is reserved for a narrow category of crimes and offenders, the Court recognized three general differences between juveniles and adults which demonstrate that juvenile offenders cannot reliably be classified among the worst offenders:

> First,…[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions.*** In recognition of the comparative immaturity and irresponsibility of juveniles, almost every State prohibits those under 18 years of age from voting, serving on juries, or marrying without parental consent.
>
> The second area of difference is that juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure. *** This is explained in part by the prevailing circumstance that juveniles have less control, or less experience with control, over their own environment.
>
> The third broad difference is that the character of a juvenile is not as well formed as that of an adult. The personality traits of juveniles are more transitory, less fixed.

543 U.S. at 569-70 (internal quotations and citations omitted). Further, the *Roper* Court explained:

> The susceptibility of juveniles to immature and irresponsible behavior means their irresponsible conduct is not as morally reprehensible as that of an adult. Their own vulnerability and comparative lack of control over their immediate surroundings mean juveniles have a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment.... The reality that juveniles still struggle to define their identity means it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character. From a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed. Indeed, the relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside.

*Id.* at 570 (internal quotations and citations omitted).

Subsequently, in *Graham v. Florida*, *supra*, the Court held the Eighth Amendment does not permit a juvenile offender to be sentenced to life in prison without parole for a nonhomicide crime. In so holding, the Court recognized "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds." 560 U.S. at 68. The Court reasoned:

> Juveniles are more capable of change than are adults, and their actions are less likely to be evidence of irretrievably depraved character than are the actions of adults. It remains true that from a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed. These matters relate to the status of the offenders in question; and it is relevant to consider next the nature of the offenses to which this harsh penalty might apply.

560 U.S. at 68-69 (internal quotations and citations omitted).

In *J.D.B. v. North Carolina*, *supra*, the Court held that a child's age properly informs the *Miranda* custody analysis, so long as the child's age was known to the officer at the time of police questioning, or would have been objectively apparent to a reasonable officer. The Court explained:

> A child's age is far more than a chronological fact. It is a fact that generates commonsense conclusions about behavior and perception. Such conclusions apply broadly to children as a class. And, they are self-evident to anyone who was a child once himself, including any police officer or judge.
> \*\*\*
> Time and again, this Court has drawn these commonsense conclusions for itself. We have observed that children generally are less mature and responsible than adults, that they often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them; that they are more vulnerable or susceptible to...outside pressures than adults, and so on.
> \*\*\*
> Our various statements to this effect are far from unique. The law has historically reflected the same assumption that children characteristically lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them.
> \*\*\*
> Like this Court's own generalizations, the legal disqualifications placed on children as a class—e.g., limitations on their ability to alienate property, enter a binding contract enforceable against them, and marry without parental consent—exhibit the settled understanding that the

8

>differentiating characteristics of youth are universal.
>
> ***
>
>As this discussion establishes, our history is replete with laws and judicial recognition that children cannot be viewed simply as miniature adults.

564 U.S. at 272-74 (internal quotations and citations omitted).

Additionally, in *Miller v. Alabama*, *supra*, the Court held the Eighth Amendment forbids a sentencing scheme that mandates life without parole for juvenile offenders. The Court noted that *Roper* and *Graham* emphasized "that the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentence on juvenile offenders, even when they commit terrible crimes." 567 U.S. at 472. The Court further explained that the mandatory penalty scheme at issue prevented the sentencer from taking into account these considerations. "By removing youth from the balance—by subjecting a juvenile to the same life-without-parole sentence applicable to an adult—these laws prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender." 567 U.S. at 474.

The majority finds these decisions inapplicable because they involve sentencing issues under the Eighth Amendment. The majority fails to acknowledge that a law mandating adult court jurisdiction, such as Article 305(A), necessarily exposes juveniles to more severe punishment and longer sentences, thus implicating Eighth Amendment concerns and making these Supreme Court decisions directly relevant. Moreover, while *Roper*, *Graham* and *Miller* concern Eighth Amendment issues, these decisions, as well as *J.D.B*, *supra*, are rooted in the Court's acknowledgment of the special status of juveniles based on documented differences between children and adults. The mandatory nature of the Article 305(A) precludes consideration of a host of characteristics and circumstances attendant to the juvenile's age. The need to recognize the unique characteristics of youthful offenders is

9

inconsistent with a statute that mandates a transfer of jurisdiction to adult court—based solely on age and the offense charged—without giving the juvenile a right to a hearing. In my view, these incremental cases from the Supreme Court have prompted the need to reevaluate the constitutionality of Article 305(A). It would be nonsensical to recognize the significance and necessity of considering juvenile characteristics solely in the context of sentencing.

Moreover, it is troubling to me that Article 305(A) provides no judicial safeguard to juveniles alleged to have committed the enumerated offenses—no judicial counterweight to any arbitrary charging authority by the state. The state has full control and discretion to seek an indictment on a particular charge, and this unilateral charging decision can effectively establish the jurisdiction over the juvenile. There is no provision to transfer the juvenile back to juvenile court if warranted by a particular situation, such as where a charge is eventually reduced or when a juvenile is convicted of a lesser crime that would not have subjected him to adult court jurisdiction initially. A meaningful hearing, informed by specific criteria to determine whether a juvenile is suitable to the rehabilitative processes available in juvenile court, prior to removing the juvenile from juvenile court jurisdiction is essential to withstand constitutional scrutiny.

Whether a defendant is tried in juvenile or adult court is not merely a matter of procedure. As the state admitted at oral argument before this court, subjecting a juvenile to trial in adult court has tremendous consequences and is more significant than a simple change of venue. Juveniles who are forced into the adult criminal justice system lose a plethora of benefits that come with adjudicating the alleged crime in the juvenile justice system, and they are saddled with an adult criminal record. Our understanding of juvenile culpability has changed dramatically over the last twenty years, shifting the way we treat accused juvenile offenders. I do not

suggest that a juvenile offender should never be subject to the jurisdiction of adult court. But, that determination should be made on an individual basis. A mandated automatic transfer provision, based on age and offense alone, is constitutionally flawed. Considering the import and ramifications involved with subjecting a juvenile to adult court jurisdiction, I would hold that a juvenile is first entitled to a hearing to comport with due process requirements to determine whether that juvenile is amenable to treatment or rehabilitation based on a careful review of relevant considerations. Because Article 305(A) does not allow for a hearing before the juvenile court is divested of jurisdiction, I find it is unconstitutional.

**12/11/19**

**SUPREME COURT OF LOUISIANA**

**No. 2019-KA-01061**

**STATE OF LOUISIANA**

**VS.**

**HUNTER FUSSELL**

On Appeal from the 22nd Judicial District Court, Parish of St. Tammany

**Hughes, J., dissents for the reasons assigned by Johnson, C.J.**

**12/11/19**

**SUPREME COURT OF LOUISIANA**

**No. 2019-KA-01061**

**STATE OF LOUISIANA**

**VS.**

**HUNTER FUSSELL**

On Appeal from the 22nd Judicial District Court, Parish of St. Tammany

**CHEHARDY, J.**, dissents for the reasons assigned by Johnson, C.J.